596 So.2d 442 (1992)
Terrtric DOCTOR, Petitioner,
v.
STATE of Florida, Respondent.
No. 77433.
Supreme Court of Florida.
March 12, 1992.
*444 Richard L. Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Joan Fowler, Bureau Chief, Sr. Asst. Atty. Gen., and Sylvia H. Alonso, Asst. Atty. Gen., West Palm Beach, for respondent.
BARKETT, Justice.
We review Doctor v. State, 573 So.2d 157 (Fla.4th DCA 1991), in which the district court certified conflict with Dunn v. State, 382 So.2d 727 (Fla.2d DCA 1980).[1] We approve in part and quash in part the decision below.
On July 14, 1988, at approximately 2:20 a.m., an unmarked scout vehicle traveling north on interstate 95 toward Saint Lucie County passed a vehicle owned by Doctor and in which he was a passenger. Five miles down the road, a highway patrol cruiser stopped Doctor's vehicle, citing a broken taillight. Because the windows were heavily tinted Trooper Burroughs asked the occupants to exit the car, and as Doctor exited the vehicle, he attempted to hide the front of his body by walking sideways. Trooper Burroughs then noticed a bulge in Doctor's groin area approximately eight inches long by four inches wide. Trooper Burroughs alerted Deputy Aprea, who also saw the bulge and thought it might be a weapon. Deputy Aprea placed Doctor against his car and told him to "remove whatever was in his pants." When Doctor failed to comply, Deputy Aprea performed a pat-down and realized the bulge was not a weapon. Rather, he felt what he believed was a package of cocaine, basing his belief upon feeling the texture of what appeared to be a plastic bag and the "peanut brittle type feeling in it," which he equated to the texture of rock cocaine.
The trial court denied Doctor's motion to suppress after the officers testified that they had stopped the car after observing a white light emitting from a crack in the tail assembly. Doctor subsequently pled nolo contendere to trafficking in cocaine, reserving the right to appeal, and was sentenced to seven years' imprisonment. The Fourth District affirmed the trial court's denial of the motion to suppress, but certified conflict with the Second District's decision in Dunn.
In Dunn, the officer felt a cylindrical object in the suspect's right front shirt pocket during the course of a pat-down search for weapons. The officer "suspected that the object was marijuana and had no apprehension that it was a weapon." 382 So.2d at 728. The district court found the marijuana should have been suppressed, holding that the seizure of contraband during a weapons pat-down is permissible only when the officer reasonably believes the object he or she feels is a weapon. The court reasoned:
Perhaps the unspoken reason for limiting searches and seizures to objects thought to be weapons is that any other rule would have the practical effect of allowing law enforcement officers to search for contraband with less than probable cause on the ostensible premise of looking for weapons.
Id. at 729. We agree with the Second District that the limited exception to the warrant requirement authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be strictly limited to searches necessary to protect the officer's safety. We therefore approve the principle of Dunn that during the course of a legitimate frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact *445 that the officer may reasonably suspect that the object may be evidence of a crime.
However, in this case, unlike in Dunn,[2] the State argues that police had probable cause, not merely reasonable suspicion, to seize the cocaine. Whether a police officer has sufficient probable cause to believe that a suspect is carrying illegal contraband will depend on the totality of the circumstances existing at the time. P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). Relevant to this inquiry is the officer's specific experience with respect to the particular narcotic in question. See Cross v. State, 560 So.2d 228 (Fla. 1990).
We note initially that the burden is on the State to prove the officers had probable cause for the seizure. See, e.g., Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981). Probable cause must be based on facts known to exist. Bailey v. State, 319 So.2d 22 (Fla. 1975) (adopted from Bailey v. State, 295 So.2d 133 (Fla. 4th DCA 1974), quashed on other grounds, 319 So.2d 22 (Fla. 1975)). Thus, an officer's experience and training are relevant to the extent that they provide specific facts from which the officer could reasonably conclude that a crime was being committed during the situation in question. The State must present more than the naked subjective statement of a police officer who has a "feeling" based on "experience" that the accosted citizen is committing a crime in order to provide the court with facts upon which a determination of probable cause can reasonably be made.
In this case, the State did provide the specific factual basis of Deputy Aprea's experience to establish its claim of probable cause. Deputy Aprea testified that he had made approximately 250 arrests for possession of a controlled substance, had been present during approximately 1000 arrests, and had seen or felt crack cocaine approximately 800 times. He further stated that during the course of 130 search warrant arrests, he had discovered cocaine hidden in the groin area on 70 occasions. Thus, Deputy Aprea's testimony regarding his experience in apprehending drug offenders went well beyond a generalized statement or mere conclusion that he was an experienced officer. Rather, he offered specific statistics evidencing his significant experience with this particular aspect of drug trafficking. Deputy Aprea concluded that in this case he believed the object he felt was crack cocaine because of "[b]eing in contact with it so many times, the texture of it, the texture of the plastic bag that it's in, the little rock formations of it, it was  if you could imagine, it was almost like a peanut brittle type feeling in it."
We do not suggest that probable cause arises anytime an officer feels an object that he reasonably suspects to be contraband. Not all concealed objects in a person's possession are contraband. Thus, merely seeing or feeling an unknown object does not suffice to show probable cause. E.g., Caplan v. State, 531 So.2d 88 (Fla. 1988) (several small rolled burnt cigarette wrappings on the floor of defendant's automobile did not provide probable cause of marijuana), cert. denied, 489 U.S. 1099, 109 S.Ct. 1577, 103 L.Ed.2d 942 (1989); Walker v. State, 514 So.2d 1149 (Fla.2d DCA 1987) (plain view of pipe did not constitute probable cause to arrest for possession of paraphernalia); Dunn.
However, in this case, the totality of the circumstances gave the officer probable cause to believe that Doctor was carrying crack cocaine in his groin area. Doctor exited the vehicle in a suspicious manner, the officers observed a large bulge which Doctor attempted to hide, and Deputy Aprea had knowledge acquired through specific experience with the unique texture of crack cocaine as well as with this type of concealment. Moreover, the size, shape, and texture of the package here severely limited the possibility that the package contained a substance other than crack cocaine.
*446 Although we disposed of the first issue adversely to Doctor in order to resolve the conflict with Dunn, we nevertheless find the cocaine should have been suppressed because the initial stop was illegal. In Kehoe v. State, 521 So.2d 1094, 1096 (Fla. 1988), this Court observed that "[w]hen the police realize that they lack a founded suspicion, they sometimes attempt to justify a stop on some obscure traffic violation." We held that a stop will not be valid just because an officer could have lawfully made the stop because, "[a]lthough it is the easiest test to follow, the fourth amendment constraints on intrusive searches and seizures transcend other concerns." Id. at 1097. We emphasized that:
Allowing the police to make unlimited stops based upon the faintest suspicion would open the door to serious constitutional violations. It is difficult to operate a vehicle without committing some trivial violation  especially one discovered after the detention.
Id. Thus, we stated a more stringent rule:
This Court, however, will not allow officers to get around the fourth amendment's mandate by basing a detention upon a pure pretextual stop. The state must show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose.
Id. (emphasis added).
In this case, the officers testified that at the time of the stop they were operating a drug interdiction program through the combined efforts of the Florida Highway Patrol and the Saint Lucie County Sheriff's Department. Trooper Burroughs testified that their major purpose that night was to interdict drugs and their primary mode of operation was to stop all traffic violators. Deputy Aprea testified that they were working with an unmarked scout vehicle that had radioed to them, detailing the description and tag number of Doctor's vehicle. Doctor testified that the scout vehicle traveled next to his own vehicle for several minutes before speeding up and passing. The officers conceded that they had no reasonable suspicion of any criminal activity until after the stop when Doctor exited the vehicle and they saw the bulge. Rather, both officers testified that they initially stopped the vehicle because of a "defective taillight." They agree that this "defect" was a crack in the innermost lens of the left taillight assembly. The officers asserted this condition violated section 316.610, Florida Statutes (1987), which provides in pertinent part:
Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as may be appropriate.
Section 316.610, however, must be read in conjunction with those statutes which delineate the specific equipment requirements for vehicles. See, e.g., § 316.220, Fla. Stat. (1987) (headlamps); id. § 316.221 (taillamps); id. § 316.222 (stop lamps and turn signals); id. § 316.2225 (additional equipment required on certain vehicles). The only such statute arguably applicable in the present case is section 316.221(1), which specifies the requirements for a vehicle's taillights:
Every motor vehicle ... shall be equipped with at least two taillamps mounted on the rear, which, when lighted as required in s. 316.217, shall emit a red light plainly visible from a distance of 1,000 feet to the rear... .
The evidence at trial revealed that Doctor's vehicle was equipped with two sets of rear lights consisting of a signal light on the outside of the light bank, then a brake light, then a reverse light, and finally a lens cover, or reflector.[3] It was the reflector that was cracked, rather than one of the lights. Trooper Burroughs confirmed that the vehicle had taillights shining on *447 each side of the rear of the vehicle, despite the cracked lens cover, at the time of the stop. Thus, as Trooper Burroughs conceded, the vehicle had "at least two taillamps" in working order when it was pulled and was not in violation of the law. See Wilhelm v. State, 515 So.2d 1343 (Fla.2d DCA 1987).
The State argues that section 316.110 allows police to stop a vehicle for malfunctioning equipment, even if the equipment is not required by statute, poses no safety hazard, or otherwise violates no law. We do not agree. Such an interpretation of section 316.110 would allow police to stop vehicles for malfunctioning air conditioners or even defective radios, a result clearly beyond the statute's intended purpose of ensuring the safe condition of vehicles operating on our state's streets and highways.
Finally, we reject the State's suggestion that the stop in this case was legal because the officers "reasonably suspected" that the taillight was in violation of the law. The trial judge held the stop permissible because "the officer determined in his own mind on that evening ... that the left rear taillight was out." Reasonable suspicion, however, is not judged by a subjective standard, but rather by an objective one. Terry, 392 U.S. at 21-22, 88 S.Ct. at 1879-1880. Law enforcement officers are charged with knowledge of the law. A reasonable officer would have known the statutory requirements for taillights as prescribed by section 316.221. Thus, a reasonable officer would have known that Doctor's vehicle was in compliance with the law since red taillights were visible on both ends of the vehicle. While a trial court's determination on a motion to suppress will normally be accorded great deference, see Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), we are compelled to reach an opposite conclusion where, as here, the trial court applied the wrong legal standard. See, e.g., Alvarez v. State, 515 So.2d 286, 291 (Fla.4th DCA 1987).
In sum, there can be no question that the stop here was pretextual since police had neither reasonable suspicion of criminal activity nor a valid basis for a traffic stop. Because the stop was illegal, the seizure was invalid and the cocaine should have been suppressed.
Accordingly, we approve the decision in Dunn and that part of the opinion below finding probable cause for the seizure. However, we quash the remainder of the decision and remand for proceedings consistent with the views expressed herein.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] The court in Dunn v. State, 382 So.2d 727, 728 n. 1 (Fla.2d DCA 1980), expressly noted that an officer who develops probable cause during a stop and frisk may lawfully seize the contraband.
[3] This was not designed to cover a lighting apparatus, but was merely a reflector to reflect rather then emit light.