612 So.2d 716 (1993)
Lloyd Edward HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 92-00957.
District Court of Appeal of Florida, Second District.
January 27, 1993.
*717 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Susan D. Dunlevy, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Lloyd Hamilton appeals his conviction for possession of cocaine. He argues, and we agree, that the cocaine was seized after an unlawful detention and search.
The trial court heard the following testimony: On the night of October 25, 1990, at around 10:00 P.M., Deputy Sheriff Gates was on routine patrol in the community of Bradley Junction. Gates described this area as having "a very bad drug problem and associated crimes with drugs." Particularly troublesome was a bar called the "Disco 400." Gates encountered appellant standing beside the road not far from this establishment. Other persons, identity and number unspecified, also were present. The precise location of the stop was an unlit area overgrown with weeds or trees. As Gates's patrol car approached, appellant "turned away and put his hands in his pockets" but did not leave the area. Gates knew appellant by sight and thought he may have arrested or charged him in the past. He stopped the vehicle, approached appellant, and asked how he was doing. Appellant responded to the effect, "Who are you? What are you doing?" and "kept putting his hands down inside of his pockets." Gates began to suspect appellant might be armed. He asked appellant to remove his hands from the pockets, then frisked him. Gates "felt a hard object in his right coat pocket and asked him what it was." Appellant stated he did not know, because he had borrowed the jacket from "Jet." Gates, who "was suspicious it was cocaine," asked if he could "see what it is." Appellant said, "Sure," and Gates removed a cocaine rock.
The search and seizure suffers from numerous problems. Appellant first questions the initial encounter, noting that an officer may not detain a citizen without a founded suspicion of criminal activity. Nothing described in the present case gives rise to such suspicion. Cf. Baggett v. State, 531 So.2d 1028 (Fla. 1st DCA 1988) (dark clothing, late hour, area where burglaries had occurred); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983) (hands in pockets, walking away). The "high crime" status of Bradley Junction and the "Disco 400" does not alter this conclusion. Hill v. State, 561 So.2d 1245 (Fla. 2d DCA 1990).
The state and trial court, on the other hand, viewed this not as a detention but merely a "police-citizen encounter." See, e.g., State v. Wilson, 566 So.2d 585 (Fla. 2d DCA 1990). We are inclined to agree that the meeting between Gates and appellant began in this fashion. Gates initially engaged in no more than "small talk" *718 and testified that appellant would have been free to walk away. A frisk or patdown, however, will turn a routine and consensual encounter into a "stop" requiring closer scrutiny. Beasley v. State, 604 So.2d 871 (Fla. 2d DCA 1992). At this point the present case becomes distinguishable from Wilson, in which the suspect's evasive answers provided additional reason for the officer to suspect criminal activity. Appellant did nothing to foster such suspicion.
Even if we were to conclude otherwise, we would still be compelled to hold that the subsequent patdown of appellant's clothing was impermissible. The lawfulness of a patdown search for weapons presupposes that a stop is valid and that the officer then forms the necessary suspicion that a suspect is armed and dangerous. "The officer in this case would not have any reason to fear for his safety if he had not stopped the appellant in the first place." Smith v. State, 592 So.2d 1206, 1208 (Fla. 2d DCA 1992). Deputy Gates articulated no reason to believe appellant might be armed. Even if justifiably concerned about appellant's hands in pockets, the patdown should have dispelled any alarm. Gates knew by this time that the pockets contained nothing but a "hard object" that was not a weapon.
At this point the state argues that the "hard object" gave Gates probable cause to arrest appellant because "based on his experience, the object ... felt like rock cocaine." Doctor v. State, 596 So.2d 442 (Fla. 1992); Davis v. State, 594 So.2d 264 (Fla. 1992). However, this is not exactly what the officer told the trial court. In fact Gates testified he was "suspicious it was cocaine, but I wasn't sure. Of course, there's no way without seeing it." This level of suspicion does not amount to probable cause.
It cannot reasonably be argued  and the state does not  that appellant consented to the search. Talavera v. State, 186 So.2d 811 (Fla. 2d DCA 1966).
Appellant's motion to suppress the cocaine rock was well-taken, and the trial court erred in denying the motion. Accordingly we reverse the judgment and sentence and remand this case with instructions to discharge the appellant.
Reversed.
RYDER, A.C.J., and DANAHY and THREADGILL, JJ., concur.