645 So.2d 156 (1994)
Sean H. HOWARD, Appellant,
v.
STATE of Florida, Appellee.
No. 94-0467.
District Court of Appeal of Florida, Fourth District.
November 23, 1994.
Richard L. Jorandby, Public Defender, and Karen E. Ehrlich, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant entered a plea of no contest to possession with intent to sell cocaine reserving his right to appeal from the denial of his motion to suppress. The sole issue on appeal is whether the police officers' seizure of cocaine *157 rocks contained in a 35 millimeter film canister concealed in defendant's waistband resulted from an illegal search. Because the police officers exceeded the scope of the consensual search for weapons and did not have probable cause to believe that the film canister contained illegal contraband, we reverse the trial court's order denying the motion to suppress physical evidence and statements.
On July 4, 1993, police stopped a vehicle, in which defendant Howard was a passenger, under the suspicion that the vehicle may have been stolen. Defendant does not challenge the validity of the stop. Although suspicion that the vehicle had been stolen was shortly dispelled, the officers learned that the driver's license of the driver was invalid. While one officer completed the paperwork regarding the driver's license violation, another officer searched the vehicle.[1] A third officer, Officer Majorossy, asked defendant, who was standing outside the vehicle during the search, if he had any weapons on him. Defendant responded that he did not. Although neither defendant nor the driver was suspected of any criminal activity at the time, Officer Majorossy asked defendant if he could search him for weapons. Defendant acquiesced. Officer Majorossy could not have searched defendant absent consent.
In the course of the weapons pat-down, Officer Majorossy felt a small plastic canister under defendant's waistband which he identified by touch as a 35 millimeter film canister. While the canister was still on defendant's person, the officer shook it and heard what sounded like "pebbles falling inside it." Officer Majorossy, who had no actual prior experience identifying crack cocaine, testified that he had a hunch or suspicion that the canister contained cocaine rocks. Officer Majorossy called to Officer Seaber, who testified that Officer Majorossy told him: "Paul, I think I have something," "I think I have drugs," "I think it's a small bottle." Officer Majorossy then shook the canister again and Officer Seaber heard what sounded like "small pebbles in a small plastic bottle." When asked what that meant to him, Officer Seaber stated, "I thought it would possibly be cocaine rock  rocks."
The scope of the search was circumscribed by defendant's voluntary consent to a weapons search. Neither officer believed the canister was a weapon nor had probable cause to believe that defendant was armed. The trial court found defendant's consent to be voluntary. The "consent" occurred during one officer's search of the vehicle and while the traffic ticket for the driver's license was being written; thus, defendant was not being illegally detained, even though he was not told he was free to go.[2]
Although we do not have reason to disturb the trial court's finding that the consent was voluntary, we hold that the officers' search impermissibly exceeded the scope of the consent *158 defendant had given. Police officers, conducting a weapons search, must use caution not to exceed the scope reasonably necessary to ensure that the individual has no weapons. Justice Anstead, writing for our court, cautioned against police officers going "too far" in identifying otherwise harmless canisters as contraband. In Interest of P.L.R., 435 So.2d 850 (Fla. 4th DCA 1983), aff'd sub nom. P.L.R. v. State, 455 So.2d 363 (Fla. 1984). Probable cause provides the check on this authority. Id.
The Florida Supreme Court has specifically cautioned against using a permissible search for weapons as a springboard for a search for other items:
Perhaps the unspoken reason for limiting searches and seizures to objects thought to be weapons is that any other rule would have the practical effect of allowing law enforcement officers to search for contraband with less than probable cause on the ostensible premise of looking for weapons.
Doctor v. State, 596 So.2d 442, 444 (Fla. 1992), citing with approval, Dunn v. State, 382 So.2d 727, 729 (Fla. 2d DCA 1980). Both sides cite Doctor in support of their respective positions.
In Doctor, the supreme court held that during a limited frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact that the officer may reasonably suspect that the object might be evidence of a crime. Therefore, reasonable suspicion that the object may be cocaine does not justify a seizure of the object  probable cause that the object to be seized is illegal contraband must exist:
Whether a police officer has sufficient probable cause to believe that a suspect is carrying illegal contraband will depend on the totality of the circumstances. P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). Relevant to the inquiry is the officer's specific experience with respect to the particular narcotic. See Cross v. State, 560 So.2d 228 (Fla. 1990).
Doctor, 596 So.2d at 445. In further elaborating on the requirement of probable cause, the supreme court cautioned that:
We do not suggest that probable cause arises anytime an officer feels an object that he reasonably suspects to be contraband. Not all concealed objects in a person's possession are contraband. Thus, merely seeing or feeling an unknown object does not suffice to show probable cause.
Id.
In Doctor, the officer felt a bulge in the groin area which he immediately believed to be cocaine. The officer had extensive prior experience with identifying drugs and drug trafficking, having made 250 drug arrests and having seen or felt crack cocaine over 800 times. He had testified that during the course of 130 search warrant arrests, he discovered cocaine in the groin area 70 times. The court noted that the officer gave specific statistics evidencing his significant experience with that particular aspect of drug trafficking.
In contrast, in this case Officer Majorossy, upon feeling the object, knew that it was a film canister and not a weapon. He had no probable cause at that point to believe that the canister contained contraband. Certainly film canisters are not exclusively used as containers for cocaine rock, although according to what the officers had learned from a training course on narcotics identification, some dealers carry cocaine in plastic bottles, pill bottles and plastic baggies.
Both officers possessed limited narcotics-related law enforcement experience. Officer Majorossy had no actual experience with cocaine; his only knowledge was gained as part of a 40 hour training course at the Reserve Academy. While he was a full-time correctional officer, Officer Majorossy was also serving as a reserve officer for the Stuart Police Department for about one year and a half. Officer Seaber, who had been with the police department two years and had no previous law enforcement experience, offered non-specific testimony about 18-20 prior undercover purchases, without explaining how those experiences specifically related to the circumstances of defendant's case.
It was not until the officers shook the canister that they began to develop further *159 grounds to suspect that the canister contained illegal contraband. The state urges us to find that the results obtained by shaking the canister fell within the "plain feel" exception to the warrant requirement of the Fourth Amendment enunciated by the United States Supreme Court in Minnesota v. Dickerson, ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In Dickerson, the Supreme Court described the "plain feel" exception as analogous to the "plain view" exception:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. (Emphasis supplied)
___ U.S. at ___, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. In recognizing the "plain feel" exception, the Supreme Court stated that the police officer conducting the search, must immediately recognize the illegal character of the object from its texture or feel. The officer is not permitted to determine that the object is contraband by squeezing, sliding or otherwise manipulating the object, once it is clear that the object could not reasonably be a weapon. Id. at ___, 113 S.Ct. at 2138, 124 L.Ed.2d at 347. In this case, because the officer shook the canister, the cocaine rocks seized during the search for weapons were not admissible under the "plain feel" exception.
We therefore find that the officers exceeded the scope of their weapons search when they shook the canister, after they knew the film canister was not a weapon and when they did not otherwise have probable cause to believe that the object was illegal contraband. See Hamilton v. State, 612 So.2d 716 (Fla. 2d DCA 1993). The shaking of the canister was an impermissible search. See Smalls v. State, 581 So.2d 1003 (Fla. 2d DCA 1991).
Even if the officers were justified in shaking the film canister, the additional information obtained by hearing the sound of "pebbles" did not supply probable cause. Interpreting the officers' testimony in the light most favorable to the state, at that point they only had reasonable suspicion. There were no other circumstances prior to shaking the canister upon which the officers could have reasonably concluded that either defendant or the driver of the vehicle probably had been or were involved in criminal activity. In fact, both officers specifically testified they had no such suspicion.
The state points to the character of the neighborhood and time of day as providing an additional factor in evaluating probable cause. However, the lounge parking lot was not specifically identified as a place for drug dealing other than being in a high-crime area. Additionally, while Officer Majorossy, a reserve officer, testified that drug dealing in the neighborhood often takes place "all evening," to the contrary, Officer Seaber, who was employed with the police department and had been involved with undercover buys when first hired, said that drug sales were "pretty frequent during the day."
Defendant was an innocent passenger who had exited the vehicle as requested by the police and who, under intimidating circumstances, "consented" to a limited weapons search in a neighborhood generally considered to be a high-crime area. The discovery of the film canister in defendant's waistband by an officer inexperienced in narcotics investigation did not lead to an automatic conclusion that the canister contained illegal contraband. Under the totality of these circumstances, the officers' suspicions did not rise to the level of probable cause justifying a search of the film canister. We accordingly reverse the trial court's order denying defendant's motion to suppress.
REVERSED AND REMANDED.
DELL, C.J., and GLICKSTEIN, J., concur.
NOTES
[1] The legality of this search is not before us because the officers did not discover any illegal or suspicious objects during this search. The trial court found the search to be a legal Belton search. In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court held that when a police officer has made a lawful custodial arrest of the occupants of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle and may also examine the contents of any container therein. In the instant case, however, the search of the car was not incident to a custodial arrest of the occupants. Therefore, the search of the vehicle did not constitute a lawful Belton search. See generally Caplan v. State, 531 So.2d 88 (Fla. 1988).
[2] Where an officer, following a traffic stop, has no articulable evidence of criminal activity to justify the detention of a defendant after the purpose of the initial stop has been effected, the officer must release that defendant. See § 901.151 Fla. Stat. (1993). Any further detention of that defendant would be illegal and would render any search, even if consensual, illegal as well. Dunbar v. State, 592 So.2d 1230 (Fla. 5th DCA 1992).

In the instant case, however, while the initial purpose for the traffic stop, suspicion that the vehicle had been stolen, had been dissipated, the continued detention was justified by the discovery of the invalid driver's license. Courts have repeatedly held that temporary detention for a traffic violation is permitted, so long as the detention is no longer than necessary to write the traffic citation. Cresswell v. State, 564 So.2d 480 (Fla. 1990); State v. Anderson, 479 So.2d 816 (Fla. 4th DCA 1985); compare Dunbar, 592 So.2d at 1231 (detention was illegal where no citation was issued and officer testified that he was done with his business prior to detaining the defendant and making the search of defendant's vehicle).