737 So.2d 590 (1999)
Nicholas DOBSON, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2145.
District Court of Appeal of Florida, Fourth District.
June 30, 1999.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Leslie T. Campbell, *591 Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Appellant pled no contest to possession of cocaine, reserving the right to appeal the denial of his motion to suppress. Appellant asserts his motion to suppress was improperly denied, requiring a reversal. We disagree.
While riding his bicycle at night without a light, the appellant was erratically zigzagging across the street. This activity prompted the officer to initiate a traffic stop. As the appellant approached, the officer noticed a bulge in the appellant's pocket and fearing it may have been a weapon, the officer conducted a pat down. As the officer conducted the pat down, he felt what seemed to be a pocket knife, and removed the item from appellant's pocket. The item was a white plastic glue tube, and the officer testified that based upon his training and experience he knew such tubes were commonly used to carry cocaine. The officer opened the glue tube and discovered rock cocaine inside.
On appeal the appellant argues that the officer did not have a reasonable and well-founded suspicion that appellant was armed and dangerous to justify the pat down because a bulge, without more, is insufficient. Further, on appeal, the appellant argues that the officer lacked probable cause to open the glue tube retrieved from his pocket. In the trial court, the appellant argued that the officer did not have a right to conduct the pat down search because no crime was being committed nor was there reason to think a crime was being committed. In addition, the appellant argued to the trial court that the officer was not justified in opening the glue tube because it was not a weapon, and the criminal nature of the glue tube was not apparent.
Neither on appeal nor in the trial court did the defendant argue that, because the officer only suspected that the object was a two to three inch pocketknife, and thus not a dangerous weapon, the officer lacked probable cause to remove the object following the pat down. Rather, on appeal, the only mention of the pocketknife as a weapon is made by the defendant in a footnote, which provides,
It is not illegal to carry a pocketknife. See L.B. v. State, 700 So.2d 370 (Fla. 1997); § 790.001(13), Fla. Stat. (1997).
Further, in the trial court, the defendant merely cited the stop and frisk law, section 901.151(5), Florida Statutes. In order to preserve an issue for appeal, the issue and specific legal argument must be presented to the lower court. See § 924.051(1)(b), Fla. Stat. (1997); Tillman v. State, 471 So.2d 32, 35 (Fla.1985). The trial court could not be expected to infer from the mere citation of the stop and frisk statute that the defendant was arguing that a pocketknife of less than two to three inches cannot be considered a dangerous weapon for purposes of the stop and frisk law, and thus that the officer lacked probable cause to remove the object. Therefore, even if it can be construed that the defendant raised this issue on appeal, the issue was not preserved by a specific argument to the trial court.
However, assuming this issue was properly preserved and raised on appeal, a pocketknife can be considered a weapon for the purposes of Florida Statutes, section 901.151(5). As the dissent points out, a pocketknife is not considered a weapon under Florida Statutes section 790.001(13), which provides:
"Weapon" means any dirk, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
Chapter 790, "Weapons and Firearms," deals primarily with permitting and licensing for the carrying of concealed weapons and other firearm and weapon regulations. Section 790.001(13) seems to establish a definition of weapons primarily for these regulatory purposes. Indeed, the argument *592 might be made that if an item were not described in section 790.001(13) as a weapon, then it could not be a weapon for the purposes of section 901.151(5). Of course, this would be an unreasonable interpretation since many items which could be considered dangerous and used to assault an officer are not described as "weapons" in section 790.001(13).[1]See Brezial v. State, 416 So.2d 818 (Fla. 4th DCA 1982)(holding that the police officer's observation of a "nail-like" object on the defendant's person justified removal of the object under the stop and frisk law to determine the precise nature of the object). In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court stated:
When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.
(* * *)
The sole justification of the [stop and frisk] search ... is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.
Id. at 24, 29, 88 S.Ct. 1868 (emphasis added). Therefore, a pocketknife with a two to three inch long blade can be a dangerous weapon for purposes of the stop and frisk law.
Returning to the issues presented on appeal, the state argues that the pat down was based upon the officer's reasonable suspicion that the bulge in the appellant's pocket could have been a weapon. The state adds that the officer's prior experience in observing glue tubes being used to carry cocaine gave the officer probable cause to open the glue tube.
In Florida, the requisite justification for an officer to conduct a pat down of a suspect is a reasonable suspicion that the suspect is armed with a dangerous weapon. See State v. Webb, 398 So.2d 820, 825 (Fla.1981). A similar situation was presented in T.P. v. State, 585 So.2d 1020 (Fla. 5th DCA 1991), wherein the officer conducted a pat down after observing a bulge in T.P's pocket which the officer suspected was a weapon. See id. at 1021-22. Based upon the officer's testimony that his observation of the bulge in T.P.'s pocket led him to believe that the bulge could be a weapon, the court concluded that the officer was reasonably justified in conducting the pat down. See id.
Likewise, in the present case, the officer testified that he observed the bulge in the appellant's pocket and thought it could have been a weapon, possibly a small caliber weapon. Thus, the officer's suspicions satisfy the requisite justification to conduct a pat down search. See Webb, 398 So.2d at 825.
As to the issue of probable cause to open the glue tube, the State has the burden of proving that the officer had probable cause based upon facts known to exist. See Doctor v. State, 596 So.2d 442, 445 (Fla.1992). In Doctor, the officer conducted a pat down and felt a plastic bag, which he thought, from his past experience, contained rock cocaine. See id. at 444. The court explained,
an officer's experience and training are relevant to the extent that they provide specific facts from which the officer could reasonably conclude that a crime was being committed during the situation *593 in question. The State must present more than the naked subjective statement of a police officer who has a "feeling" based on "experience" that the accosted citizen is committing a crime in order to provide the court with facts upon which a determination of probable cause can reasonably be made.
Id. at 445. Because the officer in Doctor testified regarding his specific experience relating to cocaine and other controlled substances, the court concluded that the totality of the circumstances gave the officer probable cause. See id.
The appellant relies upon Howard v. State, 645 So.2d 156 (Fla. 4th DCA 1994), wherein this Court found that the officers involved in that case did not have probable cause to open a film cannister discovered during a weapons pat down. See id. at 157-59. However, this Court's holding in Howard was based upon a finding that the police officers involved were inexperienced in narcotics-related law enforcement, and thus did not have a basis for believing the cannister contained cocaine. See id. This Court distinguished Doctor, noting that in Doctor, the officer had sufficient probable cause to believe that the defendant was carrying illegal contraband because the officer had extensive experience with identifying drugs, with drug trafficking, and with the manners in which cocaine was concealed. See id. at 158.
In the present case, similar to Doctor, the officer testified that he had been involved in fifteen to twenty cocaine arrests and had observed glue tubes used to carry cocaine over 200 times. Therefore, in accordance with Doctor, the officer's extensive experience relating to cocaine gave him the probable cause to open the glue tube. Accordingly, we affirm the trial court's denial of appellant's motion to suppress.
AFFIRMED.
GUNTHER and STEVENSON, JJ., concur.
WARNER, J., dissents with opinion.
WARNER, J., dissenting.
I dissent because I do not think that once the officer felt the object in appellant's pocket and suspected that at most it was a small pocketknife, under the Fourth Amendment he could conduct a further search. After stopping the appellant for a minor civil traffic infraction, the officer saw a bulge in the defendant's back pocket. On direct examination he testified that he thought it could have been a weapon. From his experience he testified that several weapons, such as a small caliber gun could fit in a pocket. However, he testified that he did not think this individual was armed but merely the presence of the bulge made him search. As he patted the defendant down for weapons, he felt the bulge and thought it was consistent with a possible pocketknife. It was described by the officer as a tube, oval in shape. He removed the object and recognized it as a cigar tube cut in half. On cross-examination, he admitted that it wasn't a cigar tube but a crazy glue tube about 2-3" in length and one-half inch in diameter. He explained that he knew when he saw the tube that it wasn't a weapon, but he opened the tube anyway because he knew that it was a common carrier for cocaine. He also testified that he had seen oval pocketknives. The trial court denied the motion to suppress based on T.P. v. State, 585 So.2d 1020 (Fla. 5th DCA 1991).[2]
I agree with Judge Griffin's dissent in T.P. Judge Griffin notes that section 901.151(5) requires an officer to have probable cause to believe that a person temporarily detained is armed with a dangerous weapon and is therefore a threat to the safety of the officer. Under the statute, *594 "[t]he officer must have a reasonable belief that the citizen he has detained is, in fact, armed with a dangerous weapon and therefore offers a threat to the safety of the officer." State v. Webb, 398 So.2d 820, 825 (Fla.1981). In T.P., the officer discovered a pill bottle but surmised that it still could be a weapon based upon internal police memoranda which described unconventional methods of concealing weapons, virtually creating the possibility that any object could conceal a weapon. Judge Griffin concluded, "[i]n the context of searches of citizens detained for investigation, if every fear becomes `reasonable' because anything is possible, `probable cause' becomes a threshold without any floor." Id. at 1024.
In this case, even if we assume that the officer could pat down the defendant for weapons in connection with a traffic stop based solely on the little bulge in his back pocket, the officer felt a tube, which he thought might be a possible pocketknife. It is at this point where I differ with the majority as I do not think that the officer could go further and remove the object. As appellant points out, a pocketknife is not considered a weapon under Florida law. See Fla. Stat. 790.001(13)(1997); see also L.B. v. State, 700 So.2d 370, 373 (Fla. 1997) (pocketknife with a blade of four inches in length or less was a common pocketknife and thus was not a weapon under the statutory definition). Carrying a small pocketknife is very common. Some persons even carry little knives on their key chains. If the Legislature has determined that a pocketknife is not a weapon, then when the officer identified the oval object he felt as being a "possible" pocketknife only 2-3 inches in length, he did not have a reasonable belief that defendant was armed with a "dangerous weapon." See C.H. v. State, 548 So.2d 895, 896 (Fla. 3d DCA 1989)(although presence of bulge in pocket may have given rise to reasonable suspicion to conduct pat down, that suspicion disappeared when officer determined that object was a cigarette case); Schnick v. State, 362 So.2d 423, 425 (Fla. 4th DCA 1978)(search not justified by the fact that officers found a pocketknife on appellant as part of a search for weapons).
While the officer might have had further cause to remove any object if the defendant were suspected of criminal activity or were being placed under arrest, I do not find observance of a bulge which on patdown feels like a possible common pocketknife on a person who is simply stopped for a civil traffic infraction, without more, warrants a further search or a more intensive search of the stopped bicyclist or motorist. Therefore, since the officer did not develop probable cause to believe a drug offense had occurred until after he removed the glue tube from the appellant's pocket, this subsequent search violated the Fourth Amendment.
NOTES
[1] Firearms are expressly excluded from the definition of weapon contained in section 790.001(13).
[2] I think the argument was sufficiently preserved by trial counsel's citation to the stop and frisk law, particularly § 901.151(5), and that the officer's pat down was solely for weapons. Moreover, the trial court relied on T.P., which is the basis for this dissent. The trial court relied on the very ground upon which I would reverse.