866 So.2d 200 (2004)
E.B., Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-778.
District Court of Appeal of Florida, Second District.
February 25, 2004.
*201 James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
E.B., following his change of plea, adjudication, and sentence, appeals the denial of his dispositive motion to suppress. We reverse.
Several days after receiving a complaint that juveniles were selling drugs and brandishing guns at a specific picnic table near the football field in Campbell Park, St. Petersburg Police Officers Books and McCoy went to the park to investigate. Dressed in uniform and operating a marked police cruiser, the officers approached the identified picnic table to begin an investigation. Officer Books estimated there were between 300 and 400 people in the park, most of whom were attending a youth football game. However, ten to fifteen juveniles on or near that table did not appear to be interested in the football game. Up to this moment, Officer Books had not observed any criminal conduct or suspicious behavior. As Officer Books exited his vehicle, E.B. was the first to get off the table and begin walking away. Several others also began to walk away. Because E.B. was the first to leave, *202 Officer Books became suspicious of him. He approached E.B., calling out that he wished to speak with him, but he did not block his path or use force to make him stop. According to the officer, E.B. stopped but did not turn around, so the officer came around to face him.
E.B. told the officer that he had been in the park hanging out with friends. Although the officer had observed no criminal conduct or any incriminating bulges on E.B.'s person, he asked for consent to do a patdown, which E.B. gave. While patting E.B.'s left front pants pocket, the officer encountered a small tube that he testified felt like a Chapstick lip balm container. He knew it was not a weapon but manipulated it anyway, causing a rattling sound. At this point, E.B. attempted to leave, but the officer grabbed him by the arm to prevent him from departing. Seeing that Officer Books had grabbed E.B., Officer McCoy came over and helped to handcuff him. Officer Books then removed the tube, took off the top, and discovered thirteen pieces of crack cocaine inside. In his over fourteen years in law enforcement, Office Books had made approximately three hundred drug arrests, half of which involved similar tubes containing cocaine.
Officer Books arrested E.B. for possession of the contraband, and Officer McCoy then escorted E.B. to their police car. As E.B. was walking with Officer McCoy, his pants began to fall. While assisting E.B. by holding the pants about waist high, Officer McCoy felt a gun in the waistband of E.B.'s undershorts, which the officer seized when they arrived at the police cruiser. The gun and the cocaine were the objects of the motion to suppress.
We address two issues: first, whether the officer went beyond the limits of a consensual patdown search and, second, whether, as the trial court determined, the "plain-feel" doctrine rendered the seizure constitutional.
When reviewing a trial court's ruling on a motion to suppress, an appellate court reviews a mixed question of law and fact. The standard for reviewing facts is whether competent, substantial evidence supports the trial court's factual findings. The historical facts should be reviewed only for clear error. The trial court's application of law is reviewed de novo. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598 (Fla.2001).
To validate a warrantless search, i.e., the patdown here, the State must prove that it falls into one of the recognized exceptions to the warrant requirement, one of which is consent. Smith v. State, 753 So.2d 713, 715 (Fla. 2d DCA 2000). Patdown searches are justified as a response to a law enforcement officer's need to be protected from violence in those situations where probable cause does not exist. "American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded." Terry v. Ohio, 392 U.S. 1, 23-24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the almost four decades since Terry, this unfortunate tradition continues. So long as it is a brief intrusion into the privacy and sanctity of the person, the protective search or patdown for weapons is, in certain situations, constitutionally permissible. Based on the officer's testimony, there is substantial, competent evidence to support the trial court's determination that the initial stop of E.B. and the patdown were consensual.
However, consent in a police-citizen encounter may be revoked by the citizen. Phillips v. State, 707 So.2d 774 (Fla. *203 2d DCA 1998). The limits of the search are defined by the extent of the consent given. Jacobs v. State, 733 So.2d 552, 554 (Fla. 2d DCA 1999) ("The scope of consent to search is generally limited to what a reasonable person would have understood to be the object of the search during the exchange between that person and the police."); State v. Wells, 539 So.2d 464, 467 (Fla.1989) ("When the police are relying upon consent to conduct a warrantless search, they have no more authority than that reasonably conferred by the terms of the consent."); Smith, 753 So.2d at 715. Generally, "in the absence of additional circumstances which would justify a more complete search, consent to a mere patdown does not include consent to reach into the pockets of a suspect and retrieve the contents." Sanders v. State, 732 So.2d 20, 21 (Fla. 1st DCA 1999) (citing Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995)).
Thus, despite the consensual stop and patdown, E.B. retained the right to revoke his consent either by verbal or nonverbal conduct. Smith, 753 So.2d at 715-16 (holding that, by setting his tongue to obscure the officer's view, the defendant denied or withdrew consent for the officer to further search his mouth and look under his tongue). Here, the record is clear that E.B. attempted to leave when the officer manipulated the tube. Indeed, the officer testified that by attempting to flee, E.B. was trying to end the encounter. This nonverbal conduct clearly evinced E.B.'s desire to withdraw the previously granted consent for the patdown and continued search of his person. By his conduct, E.B.'s previously given consent was revoked and, thus, could not thereafter act as the basis for upholding a further search. At the moment E.B. withdrew his consent by his nonverbal conduct, the officer did not have information sufficient to meet the probable cause requirement to further detain E.B.
Additionally, the officer had no other basis to detain E.B. "[F]light alone is not even a proper basis for a founded suspicion of criminal activity so as to justify an investigatory stop.... Nor does flight from an illegal detention provide a proper basis to search." Castillo v. State, 536 So.2d 1134, 1137 (Fla. 2d DCA 1988) (citations omitted). In Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court held that an individual's presence in a high crime area coupled with the individual's unprovoked flight may permit an officer to stop or detain an individual for investigative purposes. Here, the record does not contain sufficient facts to establish that Campbell Park is a high crime area.
Because the officer lacked probable cause or a founded suspicion at this point in his encounter with E.B., our next step is to determine whether what the officer knew about the size and shape of the container he felt in E.B.'s pocket provided probable cause to seize it under the "plain-feel" doctrine enunciated in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
Under the "plain-feel" doctrine, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour and mass make its [illicit] identity immediately apparent, there has been no invasion of the suspect's privacy... [,]" and therefore there is no constitutional basis for suppressing the seized contraband as fruit of the poisonous tree. [Dickerson, 508 U.S.] at 375, 113 S.Ct. 2130.
Frazier v. State, 789 So.2d 486, 489 (Fla. 2d DCA 2001). The United States Supreme Court reasoned in Dickerson that the continued exploration of a suspect's *204 pocket after the officer had determined that no weapon was present did not emanate from the Terry justification for a search to ensure officer safety and protection. Dickerson, 508 U.S. at 379, 113 S.Ct. 2130. Because the incriminating nature of the object was not immediately apparent to the seizing officer who had to both roll the item in his fingers and squeeze it to ascertain its identity, the Supreme Court held that the seizure of the contraband violated the Fourth Amendment. Id. at 378, 113 S.Ct. 2130.
Here, similar facts exist. During the consensual patdown, Officer Books neither suspected nor found that E.B. had a weapon; he found only a small, cylindrical object, which he instantly recognized was not a weapon. Moreover, the incriminating character of the object became apparent only after the officer manipulated it, produced a rattling sound, seized the container, and opened it to examine the contents.
In Harford v. State, 816 So.2d 789, 791 (Fla. 1st DCA 2002), the court discussed whether, after an officer discovered that the object he removed from the defendant's front pocket was merely a cigarette box, he was justified in opening it for further examination of the contents. The court stated:
It is evident from the officer's testimony recited above, in part, that after removal of the box from appellant's pocket he knew the object was not a weapon; and most significantly, as he forthrightly admitted, he did not suspect that there was a weapon in the box. This testimony, coupled with the absence of "specific and articulable facts," as required by Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, warranting the officer in a reasonable belief or suspicion that appellant was armed and dangerous, persuades us that opening the box exceeded the limits of a justifiable intrusion on the privacy protected by the Fourth Amendment.
Harford, 816 So.2d at 792. A plain-feel search was also the issue in Jordan, 664 So.2d 272, where the Fifth District noted that while "conducting the search, the officer could seize contraband only if, based on the totality of the circumstances, the officer felt something that he immediately knew was contraband, such as cocaine." Id. at 273.
In E.B.'s case, despite the fact that Officer Books had seized contraband in lip balm tubes many times in the past, he did not know that E.B. had illegal drugs until he seized the container and opened it. Probable cause must exist before an object can be seized; after-the-fact discovery of contraband does not render the seizure legal. Id. at 274 ("In order to establish probable cause, the officer was required to articulate facts that were known prior to the seizure."); see also Doctor v. State, 596 So.2d 442, 445 (Fla.1992) (holding that an officer searching for weapons had probable cause to seize cocaine from the detainee's person where the officer testified to his experience with the unique texture of crack cocaine, types of concealment, and methods of packaging). Further, it is the State's burden to prove a police officer possessed the requisite probable cause. A mere "feeling" based on prior experience is not sufficient. Rodriguez v. State, 807 So.2d 130, 131 (Fla. 2d DCA 2002). And although the officer had often found cocaine in similar tubes in the past, many other legal items are carried in such containers. Probable cause does not exist when the circumstances are equally consistent with noncriminal activity as with criminal activity. Angaran v. State, 681 So.2d 745 (Fla. 2d DCA 1996) (holding that a person's request to an undercover officer for rolling papers so he could "roll a joint" did not establish probable cause to believe *205 he was in possession of marijuana because it gave rise merely to competing inferences, one criminal and one not).
In Howard v. State, 645 So.2d 156 (Fla. 4th DCA 1994), a case with the closest factual similarity to E.B.'s, rock cocaine was found in a quickly identified, tubular container. In the course of a consensual weapons patdown, the officer felt a small plastic canister that he immediately identified as a 35mm film canister. With the canister in the defendant's pocket, the officer shook it and heard pebble-like sounds. The officer removed the canister and, after shaking it again and hearing the same noise, opened it to discover rock cocaine. Id. at 157. Citing the rationale of Doctor, 596 So.2d at 444, the Fourth District reiterated the Florida Supreme Court's caution to police officers conducting a patdown for weapons not to exceed the scope reasonably necessary to ensure that the individual has no weapon. Howard, 645 So.2d at 158 (stating that a permissible search for weapons should not be a "springboard for a search for other items"). "Perhaps the unspoken reason for limiting searches and seizures to objects thought to be weapons is that any other rule would have the practical effect of allowing law enforcement officers to search for contraband with less than probable cause on the ostensible premise of looking for weapons." Doctor, 596 So.2d at 444 (citing Dunn v. State, 382 So.2d 727, 729 (Fla. 2d DCA 1980)).
Further, in Howard, the court rejected the contention that the plain-feel doctrine validated the seizure. In discussing Dickerson, the court required that the police officer conducting the search immediately recognize the illegal nature of the object by touch, such as from its texture or feel, without squeezing, sliding, or otherwise manipulating the object, once it was clear that the object could not reasonably be a weapon. Howard, 645 So.2d at 159. As in Howard, once the officer felt and recognized the small, cylindrical container in E.B.'s pocket, there was no reasonable belief that it contained a weapon. By shaking it, removing it from the pocket, and opening it, the officer exceeded the limits of the consensual intrusion into E.B.'s privacy to do a patdown for weapons. This conduct was clearly proscribed by Dickerson and its Florida progeny and we, accordingly, find the search impermissible and reverse.
Reversed and remanded with instructions to grant the motion to suppress the cocaine and weapon found on E.B.'s person and for further proceedings consistent with this opinion.
SILBERMAN and VILLANTI, JJ., concur.