980 So.2d 521 (2007)
Chauncey CRAWFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-557.
District Court of Appeal of Florida, Second District.
November 28, 2007.
*522 James Marion Moorman, Public Defender, and Alisa M. Smith, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
In this appeal from his conviction for possession of cocaine, Chauncey Crawford challenges the denial of his dispositive motion to suppress crack cocaine improperly seized after he consented to a patdown during a traffic stop. Because we agree that the seizure was unlawful under the Fourth Amendment of the United States Constitution and Article 1, section 12, of the Florida Constitution, we reverse his conviction for the possession of cocaine.

STATEMENT OF THE FACTS
Mr. Crawford was a passenger in a car St. Petersburg police stopped for running a stop sign. After the car was stopped, Mr. Crawford got out of the car. Officer Michael Bush approached Mr. Crawford who, while turning away, fumbled at his waistband. Officer Bush asked Mr. Crawford not to turn his body away and to stop fumbling at his waist. Mr. Crawford continued the behavior but volunteered to provide the officer his identification card. At that moment, Officer Bush noticed a cylindrical shaped bulge approximately five or six inches long and a few inches wide in Mr. Crawford's right pants pocket. Officer Bush testified he had not witnessed any criminal activity by Mr. Crawford but that Mr. Crawford's fidgety manner, baggy clothing, and the bulge in his pocket made him concerned for his safety. The officer testified, "I did not want to search him, but I did want to pat him down because he was making me nervous. . . . When I asked him, or when I told him that I wasn't going to search him, but I did want to pat him down, because he was making me nervous, he paused for a moment . . . then said, `Go ahead.'" During this patdown, Officer Bush felt the cylindrical tube and immediately recognized it as a cylindrical M & M candy container. The container rattled when Officer Bush patted it. He testified that he knew from the sound that the tube contained cocaine but admitted that "hearing the rattle is not based on any training at all. It's really just based on being able to hear." Officer Bush removed the tube from Mr. Crawford's pocket, opened it, and found ten pieces of crack cocaine. Officer Bush testified that he has been a police officer for sixteen years, has worked in narcotics investigations for ten years, and has made over 100 arrests where crack cocaine was found inside cylindrical candy containers. Officer Bush stated that, "I've never seen *523 anything other than crack in those containers. In fact, I've never seen M and M's [sic] in an M & Ms container." He arrested Mr. Crawford for possession of cocaine.

STANDARD OF REVIEW
Appellate review of a motion to suppress is a mixed question of law and fact. Bautista v. State, 902 So.2d 312, 314 (Fla. 2d DCA 2005). Deference is given to the trial court's factual findings if they are supported by competent and substantial evidence. Id. (citing Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003)). However, this court has an "independent obligation to review the ultimate question of probable cause and reasonable suspicion" under a de novo standard to make certain law enforcement practices remain within constitutional parameters. Connor v. State, 803 So.2d 598, 606 (Fla.2001).
Here we conclude the officer's search exceeded the scope of the search circumscribed by consent for officer safety. See Howard v. State, 645 So.2d 156, 157-58 (Fla. 4th DCA 1994). Additionally, we conclude the officer's seizure of the candy container and its contents was not justified by either probable cause or the "plain-feel" doctrine exception to the warrant requirement. See P.L.R. v. State, 455 So.2d 363 (Fla.1984); E.B. v. State, 866 So.2d 200 (Fla. 2d DCA 2004). Consequently, we conclude the subsequent search of the M & M container to determine its contents was also not valid without a warrant. See Howard, 645 So.2d at 157-58.

ANALYSIS
To validate the warrantless search of Mr. Crawford and the seizure of the M & M container, the State must prove it either falls into one of the recognized exceptions to the constitutional warrant requirement or that the police had probable cause to arrest Mr. Crawford. See E.B., 866 So.2d at 202. The two exceptions pertinent to our analysis are consent and the "plainfeel" doctrine. We also evaluate whether probable cause to arrest existed to justify the officer's search of Mr. Crawford beyond his consent.

Consent
It is not disputed that Mr. Crawford consented to a patdown for officer safety. In fact, Officer Bush testified that he told Mr. Crawford he was "not going to search him" and wanted permission to "pat him down out of a concern for officer safety." When relying upon the consent to justify a search, Officer Bush had no more authority than that reasonably conferred by the terms of Mr. Crawford's consent. See Alamo v. State, 891 So.2d 1059, 1061 (Fla. 2d DCA 2004). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Once the officer identified that the bulge in Mr. Crawford's pocket was a candy container and not a weapon, we hold any further search was beyond the scope of Mr. Crawford's consent. See Frazier v. State, 789 So.2d 486 (Fla. 2d DCA 2001) (holding that when a patdown discovers nothing which could be a weapon, the officer's inquiry should end); Winters v. State, 578 So.2d 5 (Fla. 2d DCA 1991) (holding that cocaine was not properly seized because the search of the defendant's pocket exceeded the scope of a weapons search); Baldwin v. State, 418 So.2d 1219 (Fla. 2d DCA 1982) (holding that when an officer knows the object is not a weapon, he may not legally reach into a person's pocket and remove it); Meeks v. State, 356 So.2d 45 (Fla. 2d DCA 1978) (holding that the removal of a lump of marijuana from the defendant's pocket was improper because the officer knew that it was not a weapon).
*524 In sum, Officer Bush's search should have ended when he identified the object as a candy container. It did not. And although the officer's experience with narcotics cases might have led him to believe that the opaque candy container held crack cocaine, he was only permitted to pat down Mr. Crawford for safety. The record suggests that Officer Bush believed he was within the "plain feel" exception to the warrant requirement. We analyze this exception next.

Plain-Feel Doctrine
The "plain-feel" doctrine is derived from the "plain-view" doctrine. The rationale underlying the "plain-view" doctrine is that if the contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search within the meaning of the Fourth Amendment  or at least no search independent of the initial intrusion that gave the officers their advantage point." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The Supreme Court explained that the rationale underlying the "plain-view" doctrine had an obvious application by analogy to cases in which an officer discovered contraband through the sense of touch during an otherwise lawful search. Id. at 375-77, 113 S.Ct. 2130. The contraband must be immediately recognizable. Id. at 375, 113 S.Ct. 2130. Similarly, with regard to the "tactile discoveries of contraband," the Court concluded that, "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized." Id. at 375-76, 113 S.Ct. 2130. If this "plain-feel" test is met, the warrantless seizure is justified. Frazier, 789 So.2d at 489; cf. Doctor v. State, 596 So.2d 442 (Fla.1992) (holding that an officer searching for weapons could seize a plastic baggie containing crack cocaine because the officer touched and recognized the unique texture of the contraband itself).
Officer Bush clearly identified the object as a plastic M & M candy container and not a weapon by its contour and mass. See E.B., 866 So.2d 200. And because the officer used his tactile sense to identify the plastic container (as opposed to the contraband itself), the officer was unable to determine that the container possessed an incriminating character or was contraband merely by its contour, size, and shape. The Supreme Court closed the Dickerson opinion stating:
Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement.
Dickerson, 508 U.S. at 378-79. Similarly, the seizure of the cylindrical candy container from Mr. Crawford's pants pocket does not meet the "plain-feel" exception provided by Dickerson nor does it comport with its rationale. Because Dickerson limits the exception to the warrant requirement to facts involving the sense of touch or a tactile sensation, it is not, by its plain terminology, applicable to the officer's claim that the sound  a rattle  meant the tube contained cocaine. We decline to extend Dickerson's "plain-feel" doctrine under the current facts. Although the sound has no application under the "plain-feel" doctrine, it may be appropriately considered *525 under probable cause analysis, a rubric we turn to next.

Probable Cause
Probable cause is an elastic concept and requires a fact intensive analysis. Schmitt v. State, 590 So.2d 404 (Fla.1991). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
This court has previously stated:
Probable cause must exist before an object can be seized; after-the-fact discovery of contraband does not render the seizure legal. . . . Further, it is the State's burden to prove a police officer possessed the requisite probable cause. A mere "feeling" based on prior experience is not sufficient. And although the officer had often found cocaine in similar tubes in the past, many other legal items are carried in such containers. Probable cause does not exist when the circumstances are equally consistent with noncriminal activity as with criminal activity.
E.B., 866 So.2d at 204 (citations omitted).
For purposes of a probable cause review, the facts we examine are the following: Mr. Crawford was a passenger in a car that was stopped for a traffic infraction and the officer felt a hard plastic candy container in Mr. Crawford's pocket that rattled when the officer patted it. The officer testified he did not observe any criminal activity. In this context, the fact that Officer Bush ultimately located cocaine in the candy tube is not analytically germane to the totality of circumstances. The record is barren of any indicia of criminal activity prior to the illegal seizure. For example, Mr. Crawford was not stopped in the middle of conducting a narcotics transaction. Furthermore, the officer did not testify that he saw any drug paraphernalia in the car Mr. Crawford exited. Nor did the officer testify that he smelled any odor indicative of contraband use coming from the car or from Mr. Crawford's clothing. Simply put, there is no testimony that suggests Mr. Crawford was involved in any illegal drug activity. This was but a routine traffic stop. While the officer testified Mr. Crawford's fidgety manner made him nervous for his safety, he did not testify that the behavior was reflective of narcotic use or other criminal activity.
We also find no evidence that would support a conclusion that the sound emanating from a hard plastic cylindrical container differs when its contents are cocaine and not candy.[1] Thus, the officer possessed only a trained instinct, sense, or feeling that the container could contain drugs. See Hansen v. State, 385 So.2d 1081, 1086 (Fla. 4th DCA 1980). We recognize that the officer's belief is forged in the furnace of many years of work investigating illegal narcotic activity at locations and under circumstances indicating narcotics transactions were occurring. However, those circumstances are not present here, in the context of a routine traffic stop. "Every warrantless intrusion must be justified by articulable facts which would have supported the issuance of a warrant based on probable cause." State v. Ellison, 455 So.2d 424, 427 (Fla. 2d DCA 1984).
*526 In sum, although the officer testified he had a belief there was cocaine, the Fourth Amendment of the United States Constitution and Article 1, section 12, of the Florida Constitution require more than speculation. Before he removed the candy container from Mr. Crawford's pocket, Officer Bush knew the object was not a weapon. See E.B., 866 So.2d at 204. Thus, removing and opening the container exceeded the limits of a justifiable intrusion on the interests protected by the Fourth Amendment. Id. The candy container could have held a variety of things, including candy.[2] The search of it required a warrant, without which, its contents were unreachable in the context of a routine traffic stop lacking indicia of criminal activity.

CONCLUSION
We conclude on these facts that Officer Bush exceeded the scope of Mr. Crawford's consent during the patdown and that the trial court misapplied the "plain-feel" doctrine in holding that the removal and the search of the M & M container was permitted. Accordingly, we reverse Mr. Crawford's conviction. We hold that the officer's search of Mr. Crawford's pocket beyond the scope of a weapons check and the subsequent seizure and opening of the M & M container were constitutionally invalid actions. We remand with directions to discharge Mr. Crawford.
Reversed and remanded with directions to discharge.
SALCINES, J., Concurs.
FULMER, J., Concurs in result only.
NOTES
[1] There is nothing in the record that suggests this officer has been trained to or can recognize such a difference between crack cocaine and candy. In fact, based on Officer Bush's testimony, he has no knowledge of the sound candy would produce if rattled in such a plastic container because he has only experienced these containers with cocaine.
[2] Many courts throughout the country have addressed this issue. "A better-reasoned view" is that "if the object detected during a Terry search is a hard-shell closed container, then the incriminating nature of any contents cannot be immediately apparent." Ex parte Warren v. State, 783 So.2d 86, 94 (Ala.2000); cf. U.S. v. Gust, 405 F.3d 797, 801 (9th Cir. 2005) (noting a "single-purpose container" exception exists where a distinctive design of a container can "proclaim its contents and, therefore, the contents cannot fairly be said to have been removed from a searching officer's view"). In evaluating the nature of opaque containers, courts have relied on the objective viewpoint of a layperson, rather than from the subjective viewpoint of a trained law enforcement officer. Gust, 405 F.3d at 801-802. Unless it is immediately apparent to the police that they have evidence of contraband before them, the "plain-view" doctrine "may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." United States v. Miller, 769 F.2d 554 (9th Cir. 1985) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).