594 So.2d 264 (1992)
Twana DAVIS, Petitioner,
v.
STATE of Florida, Respondent.
No. 77695.
Supreme Court of Florida.
January 30, 1992.
Rehearing Denied March 25, 1992.
*265 Richard L. Jorandby, Public Defender and Tanja Ostapoff, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Joan Fowler, Senior Asst. Atty. Gen. and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for respondent.
McDONALD, Justice.
We review Davis v. State, 576 So.2d 913, 914 (Fla. 4th DCA 1991), in which the district court certified the following question as one of great public importance:
CAN A LAW ENFORCEMENT OFFICER PAT-DOWN OR SEARCH THE CROTCH OR GROIN AREA OF AN INDIVIDUAL WHO HAS CONSENTED TO BE SEARCHED?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We hold that, in the case of a random and suspicionless stop in the public area of an airport, the voluntary consent to search one's "person" does not encompass a pat-down or search of the groin area. However, in the instant case, there is adequate evidence in the record indicating the officer never came in contact with Davis' groin area and supporting the trial court's conclusion that the search conducted did not exceed the consent given by Davis.
Two Ft. Lauderdale police detectives approached Twana Davis in the Ft. Lauderdale International Airport. The detectives identified themselves as police officers, asked Davis if she would speak with them, and then asked for her identification and her airline ticket. Davis produced them for inspection. After returning the ticket and identification, one of the detectives asked if they could search her luggage and her "person" and advised Davis of her right to refuse.[*] Davis agreed to the search.
While examining Davis's bag, the female detective noticed an object protruding from underneath Davis' skirt and asked Davis if she would prefer stepping around the corner for a pat-down. Davis stated that she would prefer to do so, and they went into the alcove of a ladies' rest room. The detective then placed her hand on the package between Davis' legs. She testified that the object was taped to Davis' thigh, about two or three inches below her crotch. Believing that the object was cocaine, the detective placed Davis under arrest.
The State charged Davis with possession of more than 400 grams of cocaine. The trial judge denied Davis' motion to suppress the evidence obtained as a result of the search, finding that Davis had voluntarily consented to the search. On appeal the *266 district court upheld the trial court's denial of the motion to suppress.
To determine whether a proper constitutional search was conducted in the instant case, two issues must be addressed. First, whether Davis voluntarily consented to the search. Second, if Davis voluntarily consented to the search, was the search conducted within the limits of the consent given. United States v. Blake, 718 F. Supp. 925 (S.D.Fla. 1988), aff'd, 888 F.2d 795 (11th Cir.1989).
Whether a suspect voluntarily consents to a search is a question of fact to be determined by the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). In addition, the determination of whether the consent to a search was voluntary is a question for the trial judge and should not be disturbed on appeal unless the determination is clearly erroneous. DeConingh v. State, 433 So.2d 501 (Fla. 1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). Based on our review of the record, we hold that ample evidence supports the trial court's finding that Davis voluntarily consented to the search.
Once it is established that the search was conducted pursuant to a defendant's voluntary consent, we must determine whether the search was conducted within the limits of the consent given. United States v. Blake, 888 F.2d at 800; State v. Wells, 539 So.2d 464 (Fla. 1989), aff'd on other grounds, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Two principles guide us on this issue. First, the trial court's determinations as to the scope of the consent given and whether the search conducted was within the scope of that consent are questions of fact to be determined by the totality of the circumstances. United States v. Blake, 888 F.2d at 798. Second, the determination of the trial court will not be overruled unless it is clearly erroneous.
The United States Supreme Court has held that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness  what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, ___ U.S. ___, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). Further, the scope of the consent must be considered in light of the consenting person's expectation of privacy. State v. Wells, 539 So.2d at 467. Therefore, the inquiry in this case is whether, under the totality of the circumstances, a reasonable person would have understood that the consent to a search of one's person would encompass a search as intrusive to a person's expectation of privacy as a pat-down or search of the groin area.
A substantial expectation of privacy exists with respect to an individual's crotch or groin area. Further, the initial interference occurred in a public airport terminal, a setting that requires particular care to "ensure that police officers do not intrude upon the privacy interests of individuals." United States v. Blake, 888 F.2d at 800.
We conclude that a reasonable person would not expect a consent to a search of his or her person to encompass a search as intrusive to the individual's privacy interests as a pat-down or search of the crotch or groin. To do so, an officer must obtain specific consent to search an individual's crotch or groin.
In the instant case testimony in the record indicated that the detective never touched Davis' private parts and that the package seized was taped to Davis' inner thigh, two or three inches below the groin area. In addition, testimony in the record indicates that the detective had noticed the package protruding through Davis' skirt while searching Davis' bag and placed her hand on the package without searching or touching any other part of Davis' person. Therefore, we hold there was adequate evidence in the record for the trial court to reasonably conclude that the search did not extend to impermissible areas and, thus, that the search did not exceed the scope of the consent given.
*267 Accordingly, even though we answer the certified question in the negative, under the circumstances of this case we approve the decision of the district court.
It is so ordered.
SHAW, C.J., and OVERTON, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[*] Davis does not contend that any of these preliminary police requests were illegal.