731 So.2d 101 (1999)
STATE of Florida, Appellant,
v.
Henry PARRISH, Appellee.
No. 98-00042.
District Court of Appeal of Florida, Second District.
April 16, 1999.
*102 Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Joanna B. Conner, Assistant Public Defender, Bartow, for Appellee.
FULMER, Judge.
The State appeals the trial court's suppression of evidence obtained during a police search of Henry Parrish's truck and his person. We conclude that both the stop and the search were proper and, therefore, reverse.
On June 12, 1997, around midnight, Officers Gleason and Jackson stopped Henry Parrish's truck because its temporary license tag was in the back window instead of on the bumper and because it was not visible. It was blocked by a bicycle and other things in the truck bed. The officers directed Parrish and his passenger to get out of the truck for officer safety. After obtaining Parrish's driver's license and registration, Officer Gleason sat in the patrol car writing a traffic citation. Meanwhile, Officer Jackson asked Parrish if he would consent to a search of the vehicle, and Parrish consented.
When Officer Gleason searched the truck, he found a sharp curved knife on the floor directly underneath where the driver's right leg would be, hidden from sight with a white towel and within easy reach of the driver. Parrish testified that he told the officers that it was a roofing knife and that he is a licensed roofing contractor. Officer Gleason testified that he found no tool box or belt or other objects which could be tools in the truck. After arresting Parrish for carrying a concealed weapon, the officers searched him and found rock cocaine in his shirt pocket. In his truck they also found copper brillo pads, which Officer Gleason testified can be used as filters in smoking rock cocaine.
Parrish was charged with carrying a concealed weapon, possession of cocaine, and possession of drug paraphernalia. Parrish moved to suppress the knife, cocaine, and brillo pads, asserting that there was no probable cause to stop the vehicle, the consent given for the search of the truck was merely acquiescence to authority, and the search of Parrish was not incident to a lawful arrest because the roofing knife was not a concealed weapon.
At the suppression hearing, the trial court concluded that while the roofing knife could be considered a weapon, the *103 "stop wasn't really correct" because a temporary tag may be displayed in the rear window of a vehicle. The trial court also concluded that the consent to search was mere acquiescence to authority. We disagree with both of these conclusions.
As to the traffic stop, the trial court's ruling that the temporary tag was properly affixed to the rear window was based on law that was no longer controlling at the time the officers stopped Parrish's truck on June 12, 1997. See Holmes v. State, 710 So.2d 651 (Fla. 4th DCA), review denied, No. 93,078, 725 So.2d 1108 (Fla. Sept. 22, 1998). Holmes explains:
Section 320.131, Florida Statutes (1995), authorized temporary tags, but did not describe how they were to be displayed. Previously, Rule 15C-1.005 of the Florida Administrative Code had authorized the taping of a temporary tag to the "rear view window in an upright position." However, that Rule was repealed as of March 4, 1996. See Fla. Admin. Code R. 15C-1.005 (April, 1996).
. . .
At that time, a reasonable reading of the law was that a temporary tag had to be displayed in the same manner as a regular license plate. See §§ 316.221(2), 316.605(1), Fla. Stat. (1995).
. . .
Section 320.131(4), Florida Statutes (1997), now allows temporary tags to be displayed in the rear window of a vehicle. This amendment ... did not become effective until October 1, 1997. See Ch. 97-300, §§ 13, 54, at 5398, 5421, Laws of Fla.
Id. at 652.
Furthermore, even if the rear window display had been authorized at the time, the trial court failed to apply the visibility requirement of section 316.605, Florida Statutes (1997): "all letters, numerals, printing, writing, and other identification marks upon the plates [must be] clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front." Parrish does not dispute the officers' testimony that the tag was not visible, and no other evidence contradicts it. Therefore, we hold that the traffic stop was proper.
As to the consent issue, the trial court also misapplied the law in ruling that Parrish's consent to search the vehicle was mere acquiescence to authority. The test of whether a defendant acquiesced to authority, rather than consented to a search, is an objective one of "whether the officer's words and actions would have conveyed to a reasonable person that he or she was not free to leave." State v. Jenkins, 616 So.2d 173, 173 (Fla. 2d DCA 1993) (quoting United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). In Jenkins, as in this case, the defendant never indicated to the officers that he wanted to leave, "the encounter was not confrontational and ... Jenkins was cooperative." Id. Nothing in Jenkins' testimony contradicted the officer's version of the encounter. See id. In Jenkins we reversed the suppression of evidence, stating:
The record before us is devoid of any testimony that the officers' actions were coercive, oppressive or dominating; i.e., there was no "show of authority" to which Jenkins could "submit".... The fact that the officers were in uniform, armed, and in a marked police cruiser in and of itself does not amount to a "show of authority."
Id. at 174.
Likewise here, nothing in Parrish's testimony contradicted the officers' version of the encounter. In fact, Parrish's testimony was directed only to the tag and the knife with the exception of the single question, "Did any of the officers at any point tell you that you were free to go during after they stopped you?" to which Parrish answered, "No." Parrish never testified that he did not consent or that he believed *104 he had no choice but to consent. As in Jenkins, the record is devoid of any testimony that the officers' actions were coercive, oppressive or dominating.
Reversed and remanded for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and SALCINES, J., Concur.