743 So.2d 97 (1999)
Fred SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-226.
District Court of Appeal of Florida, First District.
September 14, 1999.
*98 Nancy A. Daniels, Public Defender; Wilson Jerry Foster, Special Assistant Public Defender and Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Sherri Tolar Rollison and Trisha E. Meggs, Assistant Attorneys General, Tallahassee, for Appellee.
BENTON, J.
Fred Sims appeals his convictions for trafficking in more than twenty-eight grams of cocaine and for resisting an officer without violence. He contends the trial court erred in denying his motion to suppress and that, absent the unlawful search that yielded the cocaine, the officers had no probable cause to effect the arrest he was convicted of nonviolently resisting. We reverse.
A policeman was the only witness at the suppression hearing. At the conclusion of the hearing, the trial judge observed:
I didn't hear anything during the course of the officer's testimony that gave rise to probable cause that any criminal conduct had happened or was taking place. I listened and I really didn't hear any Terry stop type of evidence, either....
So essentially what we have is a citizen encounter.
We agree with this analysis. At issue is whether the state met its burden to prove that Mr. Sims consented to the search of his groin.
"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). See generally Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "The existence of consent to a search is not lightly to be inferred...." United States v. Patacchia, 602 F.2d 218, 219 (9th Cir.1979). The prosecution "always bears the burden of proof to establish the existence of effective consent." United States v.. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
Mr. Sims disembarked at the Tallahassee Airport at about ten o'clock on the night of October 23, 1996, while Rufus Lang (the policeman who conducted the searches and testified at the suppression hearing) and two or three other undercover policemen were at the airport on "drug interdiction duty." Sgt. Lang and, some distance behind him, two other police officers followed Mr. Sims as he made his way to his car in the short-term parking lot.
There, displaying his badge, Sgt. Lang asked to see Mr. Sims's airline ticket and his driver's license. Outnumbered in the dark, Mr. Sims, who was never told he was free to leave,[1] complied. After examining the documents, Sgt. Lang returned them, then asked to search a duffel bag Mr. Sims had, saying he was looking for narcotics. Mr. Sims handed over the duffel bag and Sgt. Lang examined its contents on the hood of Mr. Sims's car.
Finding nothing remarkable in the duffel bag, Sgt. Lang sought permission to *99 search Mr. Sims's person. "Mind if we kind of search your person?" the trial court paraphrased. "And at that point," the trial court found, "there's no clear-cut answer to that yes or no, but the arms are raised, no step back, anything of that nature."
Relying on language in Davis v. State, 594 So.2d 264 (Fla.1992), appellant has explicitly refrained from questioning the trial court's finding that he consented to the original search of his person.[2] The Davis court said:
We conclude that a reasonable person would not expect a consent to a search of his or her person to encompass a search as intrusive to the individual's privacy interests as a pat-down or search of the crotch or groin. To do so, an officer must obtain specific consent to search an individual's crotch or groin.
Davis, 594 So.2d at 266 (obiter dicta). While dicta from the Florida Supreme Court may afford welcome guidance, see Aldret v. State, 592 So.2d 264, 266 (Fla. 1st DCA 1991), such passages lack the binding force of precedent.
As we read the decision in Davis, it does not foreclose the state's contention that any consent originally given included permission to search the groin. Whatever merit such a contention might have in other circumstances,[3] however, affirmance is not justified on such a theory in the present case. For one thing, it is clear from the fact that Sgt. Lang asked separately for consent to search Mr. Sims's grointhat Sgt. Lang himself had not understood any prior consent to authorize so intrusive a search. Applying an objective test, see Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), we conclude Mr. Sims did not consent to a search of his groin even before he was asked to give such consent.
While patting down Mr. Sims's upper body, Sgt. Lang asked "could I search his groin area." Sgt. Lang's query elicited no verbal response. Concerning Mr. Sims's nonverbal reactions, Sgt. Lang testified (in response to defense counsel's questions) at the suppression hearing:
Q. And so it was your interpretation of his motions that you construed to be consent, if in fact you asked him?
A. Yes.
Q. And specifically as to the groin area, he made no gesture with his hands at all indicating consent, did he?
A. Yes, he did. I mean, well, he didn'twhen I asked about the groin area or him, per se, he didn't make any gestures as to say, no, you can't, or don't touch me, or no.
Q. Okay, he didn't say no?
A. No, and he didn't indicate that I couldn't or in any wayto me he didn't say don't touch me or in anyany of his actions presented to me that he was trying to tell me that I couldn't touch him.
Q. And by the same token, he didn't say yes?
A. No.
Q. And you really expected that he was carrying cocaine at that point, didn't you, because of his actions and the way he responded to you by trying to turn away?
A. No, he could havewell, in a way I felt like he could have, but in the same sense, he could have been saying I don't have anything and I'm not trying to hide anything.

*100 Q. So it was ambiguous, what he was gesturing?
A. Yeah.
On this record, the trial court found that "[a]ll things taken into consideration, ... the actions of the defendant at that time and place and under the circumstances efficaciously projected to the officer consent for the search and it was a valid search."
Mindful that "[a]ppellate `deference to clearly erroneous findings of fact is not consistent with the review required in Fourth Amendment cases,' [State v.] Setzler, 667 So.2d [343, 346 (Fla. 1st DCA 1995)], even where some evidence may be said to support such findings," Phuagnong v. State, 714 So.2d 527, 530 (Fla. 1st DCA 1998), we conclude that the state failed to meet its burden to prove consent here, where no evidence supports a finding that Mr. Sims agreed to Sgt. Lang's request to search his crotch.
The trial court found "a citizen encounter, nonverbal acquiescence." Evidence adduced at the suppression hearing supports these findings. But proof of "the actions of the defendant"gestures that Sgt. Lang, the lone witness, testified were ambiguousdoes not support the trial court's additional finding or conclusion that Mr. Sims "efficaciously projected ... consent" to search his groin. Proof merely of acquiescence to authority does not meet constitutional requirements. See Bumper, 391 U.S. at 548, 88 S.Ct. 1788; Phuagnong, 714 So.2d at 531; Doney v. State, 648 So.2d 799, 801 (Fla. 4th DCA 1994).
Trial courts' findings of fact are entitled to deference, State v. Nova, 361 So.2d 411, 412 (Fla.1978) (holding "on a motion to suppress, the trial judge's conclusions of fact come to the reviewing court clothed with a presumption of correctness"), but appellate courts also have a role to play in ensuring that constitutional prohibitions against unreasonable searches and seizures are observed. See Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Phuagnong, 714 So.2d at 529 (holding "`legal questions are subject to de novo review, while factual decisions by the trial court [viewed in light of constitutionally mandated burdens of proof] are entitled to deference commensurate with the trial judge's superior vantage point for resolving factual disputes'") (quoting Setzler, 667 So.2d at 344-45).
This is not a case where, before any search took place, a citizen, when "asked about an object in his groin area,... pushed the officer and attempted to run away but was ... apprehended with a struggle," State v. Green, 721 So.2d 1258, 1259 (Fla. 5th DCA 1998), thereby affording probable cause for arrest and, incident to the arrest, a search of his person. Here the search preceded both arrest and resistance to the arrest, which the jury found was nonviolent. Nonviolent resistance to an unlawful arrest is no crime. See State v. Espinosa, 686 So.2d 1345 (Fla.1996); State v. Saunders, 339 So.2d 641 (Fla. 1976).
Sgt. Lang proceeded with his search of Mr. Sims's groin, initially by feeling his person through his clothing, then by unzipping his trousers to remove from his undergarments a wadded or folded paper napkin containing cocaine. Sgt. Lang testified he felt a hard, square object, which he was able clearly to distinguish from Mr. Sims's testicles, before he unzipped the trousers, and that long experience had taught that such a hard object so situated was very likely contraband. Without probable cause, reasonable suspicion, or consent, however, the initial, tactile search of the groin was unlawful, and its fruits should have been suppressed.
Reversed with directions that appellant be discharged.
ERVIN, J., concurs.
BOOTH, J., dissents.
NOTES
[1] "Although knowledge of one's right to refuse a search without a warrant is a factor to be considered in determining whether the consent obtained was freely and voluntarily given, there is no per se requirement that a defendant must be informed of such right. [Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)]; Bailey v. State, 319 So.2d [22, 27 (Fla.1975)]; Wilson v. State, 470 So.2d 1, 2 (Fla. 1st DCA 1984)." Acosta v. State, 519 So.2d 658, 660 (Fla. 1st DCA 1988).
[2] The trial court concluded that Mr. Sims assented, albeit nonverbally, to the original request to search his person. We do not reach the question whether evidence supported a finding that consent was initially given voluntarily. The limited scope of any such consent renders the question immaterial.
[3] We reach no question concerning the scope of consent to search persons for drugs in other settings or on other facts. Compare United States v. Rodney, 956 F.2d 295 (D.C.Cir.1992), with United States v. Blake, 888 F.2d 795 (11th Cir.1989). See generally Johnson v. State, 613 So.2d 554 (Fla. 4th DCA 1993).