753 So.2d 713 (2000)
Paul SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-3188.
District Court of Appeal of Florida, Second District.
March 17, 2000.
*714 David R. Parry of Jordan Hills Professional Center, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Paul Smith appeals his conviction for possession of cocaine, asserting that the trial court erred in concluding that he consented to a search of his mouth. We agree and reverse.
On January 9, 1998, Officer Michael Tull of the Tarpon Springs Police Department was on drug surveillance patrol in the vicinity of Lime and Stafford streets, a documented location for crack cocaine sales. The officer was in an unmarked vehicle and was attired in a tactical uniform that was marked "police"; he carried a weapon in his gun belt. While stopped at a location on the 100 block of Lime Street, Officer Tull first observed Mr. Smith, a white male, who was unknown to him at that time. Mr. Smith then left the area. Several minutes later, the officer observed Mr. Smith returning to the area. As Mr. Smith was walking through a parking lot, Officer Tull drove to within 25 feet of him, stopped his car, and asked Mr. Smith if he could speak with him. Mr. Smith walked to the front of the unmarked patrol car and, after a short conversation, the officer *715 asked Mr. Smith if he could search him. Mr. Smith said he "didn't mind," which the officer interpreted as verbal consent.
As a result of the search, the officer located a pack of cigarettes and some twenty dollar bills in Mr. Smith's right front pocket, which the officer placed on his vehicle and did not return to Mr. Smith.[1] Because the officer was aware through his experience that crack cocaine might be concealed in a person's mouth, he then asked Mr. Smith to open his mouth. Mr. Smith did so but cupped his tongue so that the officer could not see beneath it. Because "obviously he appeared to be concealing something," the officer began to give further instructions to Mr. Smith, including a demonstration of what he wanted Mr. Smith to do so that he could see under his tongue. Mr. Smith did not comply. Ultimately, a piece of off-white substance popped up from beneath Mr. Smith's gum line, which the officer recognized as crack cocaine. When requested by the officer to spit it out, Mr. Smith did not do so. Rather, he closed his mouth and began to back up. Fearing that he might run, the officer "took custody" of Mr. Smith's right arm, then took his thumb and pressed it against Mr. Smith's mouth, causing the pieces to "come flying out." The officer, because Mr. Smith resisted, "escorted him down to the ground."
Officer Tull testified that at no time during this situation did he observe or reasonably suspect any illegal conduct, nor had he seen any substance, legal or illegal, in Mr. Smith's mouth prior to the search.
This case does not involve a search based upon either probable cause or a reasonable suspicion. Instead, the issue is whether the search was justified as consensual. We conclude that it was not.
"[T]he most basic constitutional rule in this area is that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.'" Coolidge v. New Hampshire, 403 U.S. 443, 454-5, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (citing Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). To validate a warrantless search, the government must prove that the search falls into one of the recognized constitutional exceptions, one of which is consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). After the government first shows that the suspect gave law enforcement consent to search, see Phuagnong v. State, 714 So.2d 527, 531 (Fla. 1st DCA 1998), it must next prove that the consent was voluntary, an act of free will and not mere acquiescence to police authority. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Consent is not lightly to be inferred, see United States v. Patacchia, 602 F.2d 218, 219 (9th Cir.1979), and it is the government's burden to prove the existence of effective consent, see Sims v. State, 743 So.2d 97 (Fla. 1st DCA 1999). Consent, once given in a consensual encounter, may be revoked by the citizen, see Phillips v. State, 707 So.2d 774 (Fla. 2d DCA 1998); and the limits of consent are defined by the extent of the consent given, see Jacobs v. State, 733 So.2d 552 (Fla. 2d DCA 1999).
When Mr. Smith failed to comply with the officer's command to lift his tongue, a command with which he had no legal duty to comply and which the officer had no legal authority to compel, Officer Tull attempted to procure compliance by issuing instructions, all the while holding Mr. Smith there with his mouth apparently open. In seeking compliance, the officer was not seeking consent. Mr. Smith had the right to rescind his consent or to limit his consent. Through his non-verbal conduct, Mr. Smith denied or withdrew consent for the officer to see beneath his *716 tongue by holding his tongue to obscure the officer's view.
We fear that similar situations will arise in the future, perhaps because most citizens hold it to be their duty to cooperate with law enforcement, a belief with which we join. But once engaged in the process, few citizens know the boundaries that law enforcement may not legally exceed or the means to stop conduct they may perceive to be unduly intrusive. The Supreme Court of the United States has held that police officers are not required to inform citizens of their right to refuse consent to a search. See Schneckloth, 412 U.S. at 248-249, 93 S.Ct. 2041. Thus, ignorance of one's rights may lead to a denial of those rights. To avoid similar occurrences and to define rules for determining "whether an invasion of privacy is justified in the interest of law enforcement," see New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), we would suggest that our supreme court consider adopting a bright line rule that requires clear verbal consent before the search of any body orifice.[2] The rule, to insure an individual's right to privacy, should impose a duty upon law enforcement to inform a person of the right to refuse consent as well as the concomitant right to withdraw previously given consent.
Reversed and remanded.
ALTENBERND, A.C.J., Concurs specially.
DAVIS, J., Dissents with opinion.
ALTENBERND, Acting Chief Judge, concurring.
I concur in the majority decision. Law enforcement has a vital need to engage citizens on the street and to conduct field interrogations. Citizens should be encouraged to cooperate with such encounters. The methods demonstrated in this case, however, by which an initial encounter subtly evolves into an oral cavity search, serve to discourage reasonable, law-abiding citizens from cooperating during a field interrogation. Neither the Fourth Amendment nor the policies of neighborhood policing should authorize this method.
I am inclined to believe that our case law explaining consensual encounters is unintentionally expanding the parameters of these encounters beyond the "minimal police contact" authorized by the supreme court in Popple v. State, 626 So.2d 185, 186 (Fla.1993). Although Justice Grimes, writing for the majority, stated that "no litmus-paper test" exists to separate encounters from seizures, he emphasized that "a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries." Id. at 187. This analysis should be performed from the perspective of a reasonable person, untrained in the law, deciding whether he or she is free to end the encounter. It is helpful to remember that such an encounter is permissible and is not regarded as a seizure because it is the equivalent of two ordinary citizens engaging in a personal discussion. See *717 United States v. Mendenhall, 446 U.S. 544, 552, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
In this case, I believe that the consensual encounter ended prior to the oral cavity search. The oral cavity search exceeded the scope of the search Mr. Smith authorized during the "minimal" encounter. I agree that a lawful citizen encounter existed when the officer first asked if Mr. Smith "minded" if the officer "conducted a search of him." The officer did not explain, however, that his search was intended to find drugs, but only asked whether Mr. Smith had anything "illegal on his person." A reasonable person engaged in "minimal" contact with an officer might well expect that the officer wanted to perform a pat-down of "his person," and not a dental examination.
I place considerable importance upon the fact that the officer took Mr. Smith's cigarettes and money away from him and did not ask to perform an oral cavity search until he had possession of this property. Most reasonable people would not feel free to walk away from an officer who had their money. I conclude that the combination of retaining the money and cigarettes on the hood of the police car after an initial physical search, while expanding the search request to include an oral cavity search, transforms this "minimal" encounter into an illegal seizure. I recognize that this analysis tends to blur the distinction between the issue of seizure and the issue of consent to search, but when considering all the circumstances surrounding the officer's "show of authority," these two factors are both relevant. Only a person possessing a degree of authority can legitimately ask a stranger on the street if he may conduct an oral cavity search. There is no dispute about the facts within this record. I believe, as a matter of law, we are entitled to reject the trial court's conclusion and to hold that these acts were a "show of authority" that transformed a social encounter into a Fourth Amendment seizure of the person.
I realize that the case law is beginning to develop distinctions based upon an officer's rhetoric. See, e.g., Jacobs v. State, 733 So.2d 552 (Fla. 2d DCA 1999). I am not entirely convinced that a reasonable person stopped by an officer believes that he is free to leave if the officer says, "May I look in your mouth?" but has a different understanding if the officer says, "Open your mouth." Neither am I convinced that a reasonable person fully appreciates the proper scope of a search during an encounter depending upon whether the officer says "search" or "look around" or "look into." All people, including police officers, communicate the level of their authority to control others both verbally and non-verbally. We expect, and even demand, that our police officers will be polite and courteous. They are trained to assert their authority while remaining courteous. Beginning in pre-school, citizens are taught to respect the police and to cooperate with them. As a result, a polite and courteous request to search from a uniformed officer, emerging from a police car while armed with a gun and nightstick, conveys a completely different degree of authority, for instance, than a brusk order from an ice cream vendor to buy a Good Humor bar. Given that we must examine the question of an officer's show of authority and a citizen's consent from the perspective of a reasonable citizen, and given that the State has the burden of proving the citizen's consent to the search, I do not believe the State met its burden in this case.
I recognize that bright line tests are not favored in Fourth Amendment analyses. Nevertheless, even more than the citizens whose Fourth Amendment rights are at stake, good police officers need some guidelines in this arena. Without clear direction, even the best officer is likely to push the envelope of the encounter. If body cavity searches, as compared to less intrusive searches, are to be permitted as a portion of a consensual encounter on the street, at a minimum, the request to search should be unequivocal and should explain that the officer wishes to conduct a *718 specific cavity search. If the officer possesses the citizen's driver's license or other personal property at the time of the request, the citizen should be informed that his decision to allow or deny the search is voluntary. The search should not begin until the citizen has clearly consented to the request.
DAVIS, Judge, dissenting.
I respectfully dissent. As the majority recognizes in its opinion, we must determine whether Smith voluntarily consented to the police officer's search of his mouth.
At the outset, I note that our review of a trial court's order on a motion to suppress is a mixed question of fact and law, yoked to federal law. See Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998) (citing Art. I, § 12, Fla. Const.; Perez v. State, 620 So.2d 1256 (Fla.1993)). An appellate court reviews the trial court's factual findings to determine whether competent substantial evidence supports the judge's ruling. See Butler, 706 So.2d at 101 (citing Caso v. State, 524 So.2d 422 (Fla.1988)). A trial court's application of the law to its factual findings is ordinarily subject to de novo review by this court. See Butler, 706 So.2d at 101 (citing Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). However, whether a defendant consented to a search voluntarily or merely acquiesced because of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. See Davis v. State, 594 So.2d 264, 266 (Fla. 1992); Towner v. State, 713 So.2d 1030, 1031 (Fla. 5th DCA 1998); see also United States v. Worley, 193 F.3d 380, 384 (6th Cir.1999) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Consequently, an appellate court should not overturn a trial court's decision regarding consent unless the decision is clearly erroneous. See Davis, 594 So.2d at 266; Worley, 193 F.3d at 384 (citing United States v. Bueno, 21 F.3d 120, 126 (6th Cir.1994)).
Where there are two permissible views of the evidence, the trial court's conclusions cannot be clearly erroneous. See Worley, 193 F.3d at 384. As demonstrated below, there is more than one permissible view of the evidence in this case. Thus, I cannot say that the trial court's ruling on the motion to suppress was clearly erroneous.
During a consensual encounter, a citizen may either voluntarily comply with a police officer's requests or voluntarily choose to ignore them. See State v. Robinson, 740 So.2d 9, 12 (Fla. 1st DCA 1999). The citizen is free to leave, and thus the constitutional safeguards of the Fourth Amendment are not invoked. See id. A police officer "seizes" a person, within the meaning of the Fourth Amendment, when the officer limits the person's freedom of movement through physical force. See State v. Poole, 730 So.2d 340, 342 (Fla. 3d DCA 1999) (citing United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). An officer also "seizes" a person when the officer's show of authority would cause a reasonable person to believe he was not free to leave. See Poole, 730 So.2d at 342.
In both federal and state cases construing the Fourth Amendment, courts have almost universally rejected any requirement that officers advise suspects of their right to refuse consent. See Schneckloth, 412 U.S. at 231-32, 245, 93 S.Ct. 2041. Admittedly, an officer's failure to advise a person of his or her right to refuse the search, and the person's subjective lack of knowledge that he or she could refuse to consent, are relevant factors in determining whether a defendant voluntarily consented to a search under the totality of the circumstances. See id. at 227, 232-34, 248, 93 S.Ct. 2041; Tukes v. Dugger, 911 F.2d 508, 516-17 (11th Cir.1990). However, "the government need not establish such knowledge as the sine qua non of an effective consent." Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041.
*719 Here, the police officer initiated the encounter with a request, "Can I talk to you?" Smith turned and walked over to the officer, indicating that he agreed to a consensual encounter. The officer then made a second request: "I then asked if he minded if I conducted a search of him. He gave verbal consent, saying he didn't mind." The majority seemingly agrees, up to this point, with the trial court's findings that Smith voluntarily consented to a search of his person. The officer removed items from Smith's pockets, and placed them on the hood of the car immediately in front of Smith.[3]
The officer made a third request: "I asked him if he would do me a favor and open his mouth...." Smith opened his mouth. When the officer could not see Smith's entire mouth, because of the way Smith had cupped his tongue, he made another request, "Can I look under your tongue? Do you mind lifting up your tongue?" Smith moved his tongue, but placed it against his front teeth. The officer then asked for further cooperation, and began to demonstrate how he would like Smith to hold his tongue. Smith neither complied nor attempted to comply, because the cocaine became visible while the officer performed his demonstration.
The majority describes the way Smith initially cupped his tongue in his mouth as either a refusal or a limitation of consent to search his mouth. The majority characterizes the officer's questions"Can I look under your tongue? Do you mind lifting up your tongue?"as a command for Smith to lift his tongue. The majority then characterizes the way Smith placed his tongue against his front teeth as an additional refusal or limitation of consent. Finally, the majority views the officer's demonstrations of how he wanted Smith to move his tongue, after Smith had attempted to limit the search, as "instructions."
Initially, I must point out that whether the officer's demonstrations of how he wanted Smith to move his tongue constituted "instructions" or a request is irrelevant, because the officer saw the cocaine in Smith's mouth before Smith could either accede to or refuse the officer's "instructions" or request. No nexus arises between the officer's "instructions" or request and the officer's observation of cocaine in Smith's mouth. Therefore, in my view, the analysis of whether Smith consented ends with whether Smith withdrew or limited his consent when he placed his tongue against his teeth after the officer said, "Can I look under your tongue? Do you mind lifting up your tongue?"
The majority's viewpoint is not the only permissible view of the evidence. The way Smith initially cupped his tongue in his mouth may or may not be a withdrawal or limitation of consent. The officer's questions"Can I look under your tongue? Do you mind lifting up your tongue?" may be viewed as requests rather than as commands. Similarly, the way Smith placed his tongue against his front teeth may or may not demonstrate refusal or limitation of consent to search. His action could indicate any one of the following scenarios:
(1) Smith did not understand the officer's request to look under his tongue;
(2) Smith identified the officer's language as a "command," but disobeyed the command and chose to place his tongue against his teeth; or
(3) Smith understood the officer's language as a request and made a voluntary choice between:
(a) refusing the officer's request;
(b) acceding to the officer's request; or
(c) limiting the scope of the search.
*720 Admittedly, if Smith understood the officer's questions as a request"Can I look under your tongue? Do you mind lifting up your tongue?"then Smith apparently intended to limit the scope of the search.
Although it is improper for an officer to continue a search when a person withdraws his or her consent, see Phillips v. State, 707 So.2d 774, 775 (Fla. 2d DCA 1998), the Fourth Amendment does not appear to require officers to cease requesting consent to search after a suspect refuses or withdraws consent. Rather, a person's previous refusal to consent is merely one factor in determining whether a defendant voluntarily consented to a search under the totality of the circumstances. See Schneckloth, 412 U.S. at 233-34, 93 S.Ct. 2041; United States v. Pulvano, 629 F.2d 1151, 1154 (5th Cir.1980); United States v. Eggers, 21 F.Supp.2d 261, 268-69 (S.D.N.Y.1998). Absent a specific rule stating that an officer may not request an additional or more expansive search once a defendant withdraws or limits consent, I cannot say in this case that the officer's requests for Smith to move his tongue, after Smith allegedly limited the scope of the search, became a command, and Smith's response mere acquiescence.
We should not classify all compliance as mere acquiescence. Although I am mindful of the privacy interests implicated by search of certain areas of a person's body, this case does not display factors that tend to demonstrate a seizure of Smith's person and his mere acquiescence to authority. That is, there is no evidence of the threatening presence of several officers, an officer's display of a weapon, physical touching of the defendant, or use of a demanding tone of voice or language. See State v. Poole, 730 So.2d 340, 342 (Fla. 3d DCA 1999) (citing United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).
I cannot say that the trial court's factual finding is clearly erroneous. The totality of these circumstances supports the trial court's finding that the search, which concluded when the officer saw the cocaine, was premised on Smith's voluntary consent. After the officer saw the cocaine, the officer lawfully seized Smith and the cocaine.
The majority suggests that the Florida Supreme Court create a bright line rule requiring a law enforcement officer to obtain informed, verbal consent from a defendant to search any bodily orifice. I would agree with the majority's view that these troubling issues need to be addressed. However, under present law, I would affirm.
NOTES
[1] Although we are inclined to believe that an officer who unnecessarily delays return of such property to a person converts a citizen encounter into an illegal detention, we do not need to reach that issue in this case.
[2] In Davis v. State, 594 So.2d 264, 266 (Fla. 1992), the Florida Supreme Court considered whether consent to a patdown would extend to the crotch or groin area. The court observed that "a reasonable person would not expect a consent to a search of his or her person to encompass a search as intrusive to the individual's privacy interests as a patdown or search of the crotch or groin" and concluded that an officer must seek specific consent for that area. In Davis, however, the court found that the officer did not actually search the crotch or groin, and thus the court did not need to apply its proposed rule to that case. The Fourth District, however, in Johnson v. State, 613 So.2d 554 (Fla. 4th DCA 1993), held that evidence should have been suppressed when officers searched the defendant's crotch and genital area without specific consent. Although a search of the mouth is less intrusive, we advocate extending the rule to that area in which an individual has a substantial privacy interest.
[3] The majority does not reach the issue of whether this act converted this consensual encounter into a "seizure" of Smith's person. However, I believe the trial court could reasonably conclude that a reasonable person would have believed that he or she was still free to pick up the items and leave. The officer testified that Smith was in closer proximity to the items than was the officer himself.