891 So.2d 1059 (2004)
Randolph Vincent ALAMO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4346.
District Court of Appeal of Florida, Second District.
November 19, 2004.
*1060 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Deene DeGenova, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Following his plea and conviction for possession of cocaine, Randolph Vincent Alamo challenges the denial of his dispositive motion to suppress. Because this incident involved a second distinct search to which Mr. Alamo did not consent, we reverse.

FACTS
Shortly after midnight on June 2, 2002, Pasco County Deputy Sheriff Marc Petruccelli observed that the driver and front-seat passenger of a car stopped at an intersection were not wearing seat belts. He followed the vehicle until it stopped in the middle of a cul-de-sac and observed that the license tag had expired. Although the deputy did not issue a citation for having the expired license tag, the driver and Mr. Alamo, the front-seat passenger, were given citations for failing to wear a seat belt. After issuing the citations, the deputy advised the driver that he was free to leave, but he asked for and received the driver's consent to search the car. Deputy Petruccelli then asked the driver, Mr. Alamo, and the back-seat passenger to exit the vehicle.
During this time, a second deputy, Corporal Marshall Maseda, arrived to provide *1061 backup support. Corporal Maseda observed Mr. Alamo consent to Deputy Petruccelli's request that he be searched for weapons and narcotics. Consistent with the consent he obtained, Deputy Petruccelli patted Mr. Alamo down, checking his waistline and pockets. Finding nothing that would give rise to suspicion of drugs, weapons, or other criminal conduct, Deputy Petruccelli continued with other duties. Being free to go, Mr. Alamo walked away from Deputy Petruccelli's immediate vicinity and stood a short distance away next to Corporal Maseda with whom he began to chat.
During the time of this conversation, Deputy Petruccelli completed his search of the back-seat passenger; this search yielded contraband. While Deputy Petruccelli was arresting the back-seat passenger, Corporal Maseda became suspicious of Mr. Alamo based on the noncriminal conduct of being overly friendly. Corporal Maseda also believed that Deputy Petruccelli's initial search of Mr. Alamo was inadequate. Without asking for another consent to search, the corporal had Mr. Alamo step over to the side of his car and began to search him. Mr. Alamo complied by putting his hands on the car without being asked. When Corporal Maseda got down to Mr. Alamo's ankles and feet, Mr. Alamo began fidgeting but never pulled any part of his body away or verbalized an objection. The corporal felt something suspicious on the top of Mr. Alamo's foot under his sock, called Deputy Petruccelli over, and pulled a Ziploc baggie containing white powder from underneath Mr. Alamo's sock. The contents turned out to be cocaine, the subject of this motion to suppress.
The circuit court denied suppression of the cocaine found in Mr. Alamo's sock on the grounds that the two searches formed one continuous event and that Mr. Alamo's initial consent to search, given to Deputy Petruccelli, carried over to the second search performed only minutes later by Corporal Maseda. The court reasoned that there was only a short lapse of time between the two searches, and Mr. Alamo's actions did not indicate that he had withdrawn his previous consent.
We conclude, as did the circuit court, that the dispositive issue is whether the second search of Mr. Alamo was undertaken with his consent. Unlike the circuit court, however, we hold that Mr. Alamo's initial consent did not encompass the second distinct search.

DISCUSSION
To validate a warrantless search, the State must prove that the search falls into an established constitutional exception to the warrant requirement, such as consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Smith v. State, 753 So.2d 713 (Fla. 2d DCA 2000). The limits of a consensual search are defined by the extent of the consent given. E.B. v. State, 866 So.2d 200 (Fla. 2d DCA 2004). "The scope of consent to search is generally limited to what a reasonable person would have understood to be the object of the search during the exchange between that person and the police." Jacobs v. State, 733 So.2d 552, 554 (Fla. 2d DCA 1999). Thus, when relying upon consent to justify a search, law enforcement has "no more authority than that reasonably conferred by the terms of the consent." State v. Wells, 539 So.2d 464, 467 (Fla.1989).
Here, the legal authority to search Mr. Alamo's person derived from the consent he gave Deputy Petruccelli to determine whether he carried drugs or weapons. The officer did not seek, and Mr. Alamo did not give, any further consent as to the object of the search, the number of times he could be searched, or who would search him.
*1062 The record is clear. Deputy Petruccelli, after receiving consent, searched Mr. Alamo for drugs and weapons. Finding no contraband or weapons, the deputy signaled that the search was completed by beginning the same search procedure with the rear-seat passenger. At this point, the record contains no evidence from which an inference could be drawn that the search was incomplete or that another officer was required or requested to complete the search. When Deputy Petruccelli finished searching Mr. Alamo, the authority to search pursuant to the consent expired.
The record contains no factual support that Mr. Alamo either verbally or by his conduct, gave a second consent to Corporal Maseda. Because no warrant, probable cause, founded suspicion, or consent preceded the second search, no constitutional basis supports it.
The State contended and the trial court agreed that these circumstances were similar to those found in Fahie v. State, 603 So.2d 91 (Fla. 5th DCA 1992). We are not persuaded. In Fahie, police officers went to the defendant's home to investigate an attempted armed sexual assault allegedly committed by him and a man named Ross. The defendant agreed to let the officers search the premises for Ross and put no limitation on their search. The officers did an initial walk-through but found nothing; then one officer returned to the defendant's bedroom and this time observed a gun lying in plain view on the bed. The gun turned out to be stolen, and the defendant thereafter admitted there were other weapons in the house, including the knife allegedly used in the sexual assault. On appeal, the defendant contended that his consent to the search terminated when the officers completed their initial walk-through search and that the second search exceeded the scope of his consent. The Fifth District affirmed the conviction, reasoning that the second search was not beyond the scope of the consent first given, which had no express limitation on the officers' ability to search, that the officers never left the premises, that there was no significant delay, and that both searches were made for the same purpose.
In several critical respects, this case is distinguishable from Fahie. First, in Fahie, the officers had not completed the search or left the premises when one officer returned to the bedroom, and the defendant had put no limitations on the consensual search of his home. Here, Mr. Alamo's consent to search his person was limited to a search for either weapons or drugs and the search was to be performed by Deputy Petruccelli. Also, unlike Fahie, the search had been completed.
Next, citing to Fahie, the trial court emphasized that only a short time elapsed, merely a few minutes, before Corporal Maseda began the second search. While the time frame is an important factual consideration, the critical analysis must focus upon whether Corporal Maseda possessed the lawful authority to search Mr. Alamo. The State's proffered legal justification for the search was the consent granted to Deputy Petruccelli. But, because that consensual search had been completed by the deputy, Corporal Maseda possessed no consent for his search. It is unreasonable to conclude that Mr. Alamo's initial consent provided carte blanche authorization for future searches as long as each was only moments apart.
It is also significant that the search here was of Mr. Alamo's person, not of a house. His freedom of movement was restrained only because he had consented to the search of his person. Once that task was completed, he was free to go. Furthermore, Corporal Maseda's belief that Deputy Petruccelli's search was inadequate because it lacked the thoroughness he preferred and his suspicion aroused by *1063 overly friendly behavior are not relevant to a consent analysis under the facts of this case.
The record reveals no fact indicating that Corporal Maseda's search was a mere continuation of Deputy Petruccelli's or that Corporal Maseda possessed an independent founded suspicion or probable cause to search Mr. Alamo. The second search of Mr. Alamo was performed by a different officer, at a different time, in a different location. These circumstances do not support the trial court's conclusion that this was "a continuous event."
Finally, we do not agree with the State's argument that Mr. Alamo, by voluntarily putting his hands on the car when Corporal Maseda had him move to the back of the car and made a motion to begin searching him, impliedly consented to the search. See Popple v. State, 626 So.2d 185 (Fla.1993) (holding that the deputy's direction for the defendant to exit his vehicle constituted a show of authority that restrained the defendant's freedom of movement because a reasonable person under the circumstances would believe that he should comply). This was a second, separate event, requiring a second, separate consent.[1] It remained the State's burden to establish the consent exception to the warrant requirement for the second search, and it failed to carry that burden.
We reverse and remand with directions for the circuit court to vacate Mr. Alamo's conviction and sentence.
FULMER and SILBERMAN, JJ., Concur.
NOTES
[1] We note that had Deputy Petruccelli indicated in some other fashion that he was not through with searching Mr. Alamo, or that Corporal Maseda would continue the search he began, the outcome of this case might have been different. As he did not, the unique factual circumstances of this case mandate reversal.