894 So.2d 1032 (2005)
Howard W. LOWERY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-3019.
District Court of Appeal of Florida, Second District.
January 19, 2005.
Rehearing Denied March 7, 2005.
*1033 James Marion Moorman, Public Defender, and Andrea Norgard, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Howard Lowery appeals from the denial of his motion to suppress evidence. We reverse because the State failed to demonstrate that Lowery consented to the seizure of a pill bottle from his pocket.
Detective Brant Gederian testified that he and Officer Angie Burn were driving in a marked police car on March 10, 2003, when they witnessed Lowery riding a bicycle with no headlight. They stopped Lowery for the headlight violation. Lowery provided his name and date of birth on request, and the officers ran a warrant check. When it was confirmed that there were no warrants outstanding, the officers gave Lowery a verbal warning for the headlight violation. Officer Gederian described what happened next:
I told him he was free to go and asked him if he had any weapons on his person or anything like that and he said no. I asked him if he would consent to search and I remember he did say yes, but he spun around and faced away from me and put his hands up in the air so I could pat him down.
Detective Gederian stated that "a couple seconds" elapsed between when he told Lowery he was free to go and when the detective asked if Lowery would consent to a search. The detective next described how he recovered from Lowery's pockets first a knife, which he later described as an "ordinary pocketknife," and then a pill bottle, which he later described as a "small little pill bottle" in which he found a white rock that appeared to be crack cocaine:
I patted down his left front pants pocket and I felt a knife and I started to reach in for it and he tried to reach in and grab it at the same time and I told him not to do that and I pulled a knife out of his pocket, a folding knife. And then I tried to pat down his right front pants pocket and I felt a bulge and he tried to grab for that again, so I stuck my hand in there and pulled out a pill bottle.
The detective clarified the interaction:
Q. Okay. Do you recall the Defendant reaching into his pocket once you found the knife?
A. Yes. He tried to reach into his left pocket. I felt the knife and I went to retrieve it and he tried to reach in for it also and I told him to stop and he did.

(Emphasis added). The detective testified that he relied on Lowery's consent throughout the entire search and that, during the search, Lowery never said or implied that he was withdrawing consent.
Lowery argues on appeal that his initial consent was involuntary and instead was an acquiescence to police authority. He also asserts that the seizure of the pill bottle exceeded the scope of the consent given, and that his actions during the search constituted nonverbal gestures indicating a wish to stop or limit the search. *1034 Finally, he contends that pursuant to the "plain feel" doctrine, the seizure of the pill bottle was improper.
We do not agree that the initial consent to search was involuntary. The record is undisputed that Lowery gave verbal consent to search after being told by the officer that he was free to leave. Thus, at that point, the officer was free to conduct a consensual search. See Watts v. State, 788 So.2d 1040 (Fla. 2d DCA 2001) (en banc) (upholding consensual search where officer, after running warrants check, told defendant he was free to go but then asked if he could search him); see also State v. Parrish, 731 So.2d 101 (Fla. 2d DCA 1999) (upholding consensual search of truck after traffic stop).
The State does not attempt to justify the search of Lowery's pockets on any theory other than a consensual search. Consent to search, once given, however, may be revoked by the citizen, and the limits of consent are defined by the extent of the consent given. Smith v. State, 753 So.2d 713 (Fla. 2d DCA 2000) (holding that search of defendant's mouth was not consensual and police officer did not have authority to command the defendant to lift his tongue). Although the officer testified that Lowery never withdrew consent, the record is undisputed that Lowery twice attempted to reach into his pockets at the same time that the officer was attempting to search the pockets. Further, the officer's assertion that Lowery never withdrew his consent is belied by the officer's additional testimony that he told Lowery to "stop" when Lowery reached into his pocket as the officer was also reaching into the pocket. Thus, this search cannot be characterized as consensual for two reasons. First, before any item was confiscated by the officer, Lowery made a nonverbal gesture indicating that his verbal consent was being withdrawn; second, the officer used his authority to restrict Lowery's freedom of movement during the search. In a consensual search, an officer has no authority to command the person being searched to stop interfering with the search.
"A citizen encounter becomes an investigatory, or Terry, stop, once an officer shows authority in a manner that restrains the defendant's freedom of movement such that a reasonable person would feel compelled to comply." Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002) (citing Popple v. State, 626 So.2d 185, 186 (Fla.1993)); see also Koppelman v. State, 876 So.2d 618 (Fla. 4th DCA 2004). Based on the officer's description of Lowery's attempt to grab the bottle and because the officer was without authority to give Lowery a command to stop interfering with the search, the facts establish that Lowery withdrew his consent before the officer pulled the pill bottle from his pocket.
Consensual searches have been invalidated under similar circumstances where a defendant's nonverbal actions are inconsistent with the verbal consent given. See Smith; Jimenez v. State, 643 So.2d 70, 72 (Fla. 2d DCA 1994) (holding that although the defendant initially gave consent to a pat-down search, he withdrew consent when he twice grabbed the deputy's hand in an apparent attempt to stop the search of the cigarette package in his pocket); Jackson v. State, 730 So.2d 364 (Fla. 4th DCA 1999) (stating that the defendant withdrew consent to search shorts in a duffle bag before officers developed probable cause for search of the shorts). But see Towner v. State, 713 So.2d 1030 (Fla. 5th DCA 1998) (stating that there was no withdrawal of consent where the defendant placed her hand over the officer's hand in a light touch).
*1035 The State asserts that Lowery is barred from arguing that he withdrew his consent because this was not specifically argued below. We reject this contention because the trial court improperly denied Lowery's counsel the opportunity to make any argument on the motion to suppress. Thus, we cannot say what Lowery's counsel would have argued and cannot determine whether the argument would have been waived. Accordingly, we reverse and remand for the trial court to grant the motion to suppress.
Reversed and remanded with directions.
SALCINES, J., Concurs.
SILBERMAN, J., Dissents with opinion.
SILBERMAN, Judge, Dissenting.
Because the evidence supports the conclusion that Lowery did not withdraw his consent to the officer's search, I respectfully dissent.
The majority acknowledges that Lowery consented to the search, but it concludes that Lowery made a nonverbal gesture that conveyed his withdrawal of consent. Detective Gederian testified regarding the sequence of events before and during the search, including the nonverbal gesture that the majority asserts evidenced Lowery's withdrawal of consent.
Detective Gederian testified that he gave Lowery a verbal warning about the headlight violation. After he gave the warning, the following transpired:
I told him he was free to go and asked him if he had any weapons on his person or any thing like that and he said no. I asked him if he would consent to search and I remember he did say yes, but he spun around and faced away from me and put his hands up in the air so I could pat him down. I didn't even have to tell him to do that.
....
I patted down his left front pants pocket and I felt a knife and I started to reach in for it and he tried to reach in and grab it at the same time and I told him not to do that and I pulled a knife out of his pocket, a folding knife. And then I tried to pat down his right front pants pocket and I felt a bulge and he tried to grab for that again, so I stuck my hand in there and pulled out a pill bottle.
The detective stated that after he took possession of the knife he continued the search, relying on Lowery's initial consent. He testified that Lowery "never withdrew his consent, ever."
Detective Gederian added that after he found the knife in one pocket and felt the bulge in the other pocket, he thought the second bulge may have been a weapon. He removed the item, which he discovered was a pill bottle. Detective Gederian testified as follows:
I shook the pill bottle and I could hear something rattling around inside. When I pulled the pill bottle out of his pocket, Mr. Lowery said that's not mine. So I shook it and I heard something and I opened it up and I saw a white rock in there.
Based on his experience, Detective Gederian believed the rock to be crack cocaine. He then reiterated that Lowery never withdrew his consent:
Q. [D]uring the search, however, was he cooperative or did he give you any indication that he wanted you to stop?
A. Never. Never said that. Never implied it. Never tried to withdraw consent or anything.
Q. Okay. Do you recall the Defendant reaching into his pocket once you found the knife?

*1036 A. Yes. He tried to reach into his left pocket. I felt the knife and I went to retrieve it and he tried to reach in for it also and I told him to stop and he did.
Lowery also testified at the suppression hearing. He admitted consenting to the search and stated the following:
[The Detective] said I'm going to search you. I said, sir  I wasn't going to say no. I said, sure, go ahead and search me. He pulled out a pocket knife and the bottle with one rock in it.
Significantly, he did not claim or suggest that he withdrew his consent or attempted to withdraw his consent, and he did not claim or suggest that his conduct was somehow an effort to stop the search or to withdraw his consent.
Simply put, Lowery did not dispute the detective's statements that he could have withdrawn his consent and left and that he never withdrew his consent to search. Instead, Lowery testified that after the detective found the knife and pill bottle he told Lowery, "[Y]ou're under arrest, now here's a chance, if you want to run now, go ahead and run." Lowery said he then hopped on his bike and started to leave when the detective and another officer caught up to him, threw him down, and handcuffed him. After hearing the testimony, the trial court denied the motion to suppress.
The majority correctly acknowledges that Lowery consented to the search, but it concludes that Lowery's movement towards his pockets constituted a nonverbal gesture indicating that his verbal consent was being withdrawn and that the detective then used his authority to restrict Lowery's freedom of movement. Based on the evidence that was presented, including Lowery's own words, I cannot agree that the trial court erred in denying the motion to suppress.
The question of whether a person "voluntarily consents to a search is a question of fact to be determined by the totality of the circumstances." Davis v. State, 594 So.2d 264, 266 (Fla.1992). The trial court's determination of this issue "should not be disturbed on appeal unless the determination is clearly erroneous." Id. An appellate court cannot substitute its view of the facts for that of the trial court. DeConingh v. State, 433 So.2d 501, 504 (Fla.1983). Moreover, the trial court's determination of factual issues relating to consent is clothed with a presumption of correctness, and an appellate court must interpret the evidence and the reasonable inferences and deductions derived from the evidence in a manner most favorable to sustain the trial court's decision. Pagan v. State, 830 So.2d 792, 806 (Fla.2002); State v. Hunton, 699 So.2d 320, 321 (Fla. 2d DCA 1997).
Regarding the withdrawal of consent to a search, this court has stated that "[i]t is well settled that in the context of a consensual encounter, a voluntary consent to search can be withdrawn." Phillips v. State, 707 So.2d 774, 775 (Fla. 2d DCA 1998). In Towner v. State, 713 So.2d 1030 (Fla. 5th DCA 1998), the Fifth District upheld the trial court's denial of a motion to suppress on the basis that consent to a search had not been withdrawn. The court noted that "[t]he determination of whether the consent to search is voluntary is a question for the trial judge and should not be disturbed on appeal unless the determination is clearly erroneous." Id. at 1031. There, when the officer reached into the defendant's pocket, the defendant placed her hand over the officer's hand with a light touch, but the defendant did not verbally indicate that she wanted the search stopped. Id.
In Jimenez v. State, 643 So.2d 70, 72 (Fla. 2d DCA 1994), we concluded that "[t]he defendant withdrew his consent when he twice grabbed the deputy's hand *1037 in an apparent attempt to stop the search." In Nease v. State, 484 So.2d 67 (Fla. 4th DCA 1986), the defendant consented to a search of his luggage, but then he ran from law enforcement. The court concluded that the act of running away constituted a nonverbal withdrawal of the consent to search. Id. at 69. In State v. Hammonds, 557 So.2d 179 (Fla. 3d DCA 1990), the court upheld the suppression of evidence, noting that the defendant verbally withdrew her consent to a search, and her subsequent silence could not be construed as continued consent for the search.
Here, Lowery's movement of his hands towards his pockets, and what he was intending to do by his movement, was far more ambiguous than what occurred in the cases cited above. Lowery did not touch the officer, cover his pocket, grab the officer's hand, try to leave, or otherwise say or do anything to stop the search or to indicate he was withdrawing his consent to the search. Lowery's intent, whether it was to pull out the knife to use against the officer, to pull out the knife or pill bottle to hand to the officer, or to do something else, cannot be gleaned from his hand motions. If Lowery's intent was to withdraw his consent to the search, nothing prevented him from unambiguously expressing that desire by word or deed. And significantly, his testimony at the suppression hearing did not refute in any way the detective's testimony that Lowery consented to the search and did not withdraw or attempt to withdraw his consent.
In Burton v. United States, 657 A.2d 741, 746 (D.C.1994), the court rejected the argument that an equivocal attempt to revoke consent was enough to establish that consent was, in fact, withdrawn. The court reiterated that "conduct falling short of `an unequivocal act or statement of withdrawal' is not sufficiently indicative of an intent to withdraw consent." Id. (quoting United States v. Alfaro, 935 F.2d 64, 67 (5th Cir.1991)). The Burton court reviewed numerous cases that use the unequivocal revocation of consent standard and stated that "[o]ther courts have implicitly adopted an unequivocal revocation of consent standard, holding that the conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to a search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both." 657 A.2d at 746-47 (footnotes omitted).
In Burton, the appellant gave consent to a search of his person. After the search commenced and a detective noticed a bulge in the appellant's jacket, the appellant grabbed his jacket, looked away, and put his hand into the pocket. It appeared to the detective that the appellant was attempting to extract something from the pocket and hide it, and the detective told the appellant to remove his hand from the jacket. The appellant complied, and the detective removed a package that was later found to contain cocaine.
The court explained that there were a number of possible explanations for Burton's conduct. His furtive movement could reasonably have been interpreted as an attempt to hide the pocket's contents or to acquire a weapon, or it "could have also indicated the reflexive response of a guilty conscience or an attempt to assist the detective's search." Id. at 748. Further, the movement could have been an attempt to withdraw consent, or it could have been an attempt to discard drugs before they were found. Id. The court concluded that suppression was not required because the conduct did not constitute an unequivocal withdrawal of consent, and stated that "[t]o hold otherwise would require the police in future cases to scrutinize every gesture for an indication that a suspect may possibly wish to withdraw consent when he or she has otherwise failed to clearly express that desire." Id. at 749.
*1038 Regarding Detective Gederian's statement to Lowery not to reach into the pocket or to stop reaching into the pocket at the same time that Gederian was doing so does not alter the analysis. In context, the statement can fairly be read as indicating that the detective would remove what was in the pocket without Lowery's assistance. Detective Gederian testified, without contradiction, that he told Lowery before the search that Lowery was free to go and that Lowery remained free to go during the encounter. Again, Lowery himself testified and did not dispute, in any way, Detective Gederian's testimony that he had been free to end the encounter and leave.
In summary, the majority decision turns on its interpretation of Lowery's hand motions as indicative of his withdrawal of consent. Neither the officer on the scene nor the trial court interpreted Lowery's movements in that way, and Lowery's own testimony did not suggest that he intended or desired to withdraw his consent to the search. Thus, I cannot agree with the majority's conclusion. Accordingly, I would affirm the trial court's denial of the motion to suppress and affirm the conviction and sentence.